KALLAS MILLWORK CORPORATION and another, Plaintiffs and Respondents, v. SQUARE D COMPANY and another, Defendants: ITT GRINNELL CORPORATION, Defendant and Appellant.

*No. 319. Argued October 29, 1974.—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 454.)

For the appellant there were briefs by *Ames, Riordan, Crivello & Sullivan* of Milwaukee, and oral argument by *Frank T. Crivello;* and a supplemental brief by *Ames, Riordan, Crivello & Sullivan,* attorneys, and *Victor A. Miller,* attorney general, and *David C. Rice,* assistant attorney general, of counsel.

For the respondents there was a brief by *Frisch, Dudek, Slattery & Denny* of Milwaukee, and oral argument by *William A. Denny.*

HEFFERNAN, J. This appeal concerns the interpretation and constitutionality of sec. 893.155, Stats., the statute of limitations primarily applicable in the instance of the claimed negligence of architects and engineers and other designers. We conclude that a high-pressure water system designed for fire protection constituted, as a matter of law, "an improvement to real property" as that phrase is used in sec. 893.155.

We also conclude that sec. 893.155, Stats., is unconstitutional, because it grants immunities to the class of

defendants protected therein on a classification basis that is unreasonable and denies other possible defendants equal protection of the laws, under the constitution of the United States. In addition, the statute deprives a plaintiff of a remedy for a wrong that is recognized by the laws of the state. The statute is therefore also unconstitutional under art. I, sec. 9, of the Wisconsin Constitution.

The order of the trial court overruling the defendant's demurrer is affirmed.

The plaintiffs, Kallas Millwork Corporation and Charles Smith, occupy property adjacent to that owned by the Square D Company. Sometime between 1945 and 1952, they allege the ITT Grinnell Corporation negligently installed a high-pressure water line on the Square D premises. On December 31, 1968, this water line ruptured, and the water therefrom inundated the property of the nearby plaintiffs, causing substantial damage.

The defendant, ITT Grinnell Corporation, demurred to the complaint. It relied upon the period of limitation prescribed in sec. 893.155, Stats.:

"893.155 **Within 6 years.** No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 6 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action."

The trial court overruled the demurrer on the ground that whether a fire protection system was "an improvement to real property," as contemplated by the statute, was a question of fact that could only be resolved at trial.

The appeal was taken by Grinnell solely on the ground that the trial judge erred in concluding that facts had to be resolved at trial to determine whether a fire protection system was an "improvement."

At oral argument it became apparent to this court that, were it to hold a fire protection system constituted an "improvement" as a matter of law, sec. 893.155, Stats., would, prima facie at least, bar any action against Grinnell.

In *Rosenthal v. Kurtz* (1974), 62 Wis. 2d 1, 213 N. W. 2d 741, 216 N. W. 2d 252, the constitutionality of sec. 893.155, Stats., was preliminarily considered. We concluded, however, that the case could be resolved on other grounds without a constitutional showdown.

We therein stated that similar statutes had been found unconstitutional in other jurisdictions and concluded:

". . . a constitutional challenge to sec. 893.155, Stats., on any one of several grounds, including improper classification, might have substantial arguable merit. We believe we would be derelict in our duty to the legislature if we did not point out the extremely shaky constitutional and statutorily anomalous underpinnings of the statute." (P. 11)

Because this court felt that the instant case might well present a factual situation wherein a constitutional showdown would invariably result, we asked counsel to file briefs directed to that question.

We hold initially that the trial court erred in concluding that the determination of whether the fire protection system was an "improvement" was a matter of

fact to be resolved at trial. As a matter of law, based on undisputed facts, the fire protection system was an "improvement to real property."

The interpretation of the meaning and legal significance of words is particularly within the capabilities and function of a court. A jury finding in respect to the instant case would be irrelevant. There are no facts for a jury to find. Rather, the question, where the facts are undisputed, is simply whether those facts fit the legislatively prescribed condition. This is a legal question to be resolved on the basis of the common usage of language.

Webster's, *Third International Dictionary* (1965), includes the following definition of "improvement":

"[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."

Similar definitions are found in 1 Bouvier's, *Law Dictionary* (Rawles 3d rev., 1914), page 1517, and Black's, *Law Dictionary* (West, rev. 4th ed., 1968), page 890.

Under these commonly accepted usages, it is apparent that the high-pressure water pipe designed for fire protection, as a matter of law, was "an improvement to real property" within the meaning of sec. 893.155, Stats.

Under a literal interpretation of the statute, once it was determined that the water pipe was an improvement, the trial judge was required to sustain the demurrer in the absence of the claim of unconstitutionality or other legal defense and dismiss the complaint.

In the instant case, the high-pressure water system was laid between 1945 and 1952. The damage to the plaintiff occurred on December 31, 1968.

No interpretation of the facts can bring the date of the injury within six years of either the end of the

defendant's performance or the completion of the total construction.

Under the terms of the statute, the plaintiffs could bring their action no later than 1958. Yet they had no damages and hence no cause of action until ten years later.

We referred to this type of situation in *Rosenthal, supra,* page 7:

"In the instant case the plaintiffs' cause of action accrued early in 1970. Under the defendants' interpretation of the statute, the period of limitations would have expired in 1969, prior to the time the plaintiffs could have moved to enforce their rights."

We also in *Rosenthal,* page 7, pointed out that:

"In Wisconsin we have found at least two major policy purposes behind a statute of limitations. One is to deny a court forum to those who have slept upon their rights. The other is to protect a defendant from stale claims and from lawsuits brought at a time when memories have faded and a defense becomes more difficult. *Peterson v. Roloff* (1973), 57 Wis. 2d 1, 6, 12, 203 N. W. 2d 699; *State Farm Mut. Automobile Ins. Co. v. Schara* (1972), 56 Wis. 2d 262, 268, 201 N. W. 2d 758. The lapse of time, however, poses equal or greater problems for the plaintiff, who in the usual case has the burden of proof. The denial of a remedy by the invocation of a statute of limitations is traditionally justified by the neglect of the plaintiff to assert his rights.

"What justification can there be in terms of traditional policies behind statutes. of repose when we have as recently as 1973 said that one policy worthy of implementation is 'that of allowing meritorious claimants, who have been as diligent as possible, an opportunity to seek redress for injuries sustained.' *Peterson v. Roloff, supra,* page 6. The plaintiffs showed reasonable diligence in commencing a suit within a year after they were aware of their injury.

"Sec. 893.155, Stats., however, not only bars a suit before the injured party is aware of his right to do so, but goes further and bars the right to sue before it

arises. Yet sec. 893.14, the prefatory section to sec. 893.155 seems to indicate that in each of the limitations thereinafter specified a right of action exists subject to the bar of limitations. If such be the case, that there is a legislatively recognized right of action that arises when the injury is sustained, a serious constitutional question is posed if the legislature, in contravention of a right statutorily recognized by it, provides, in contravention to art. I, sec. 9, of the Wisconsin Constitution, that there will be no remedy for the wrong." (Pp. 7, 8)

It seems, therefore, that there is little rational justification for this statute in the traditional terms by which statutes of limitation are judged. The effect here is to give special and unusual immunities to the class referred to in the statute as persons "performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property."

In the plaintiffs' supplemental brief on the constitutional validity of the statute, counsel urges that the statute, by singling out the group to be protected while excluding others similarly situated, denies equal protection of the law to the excluded group.

The test for finding legislation under the equal protection clauses of either the United States or Wisconsin Constitution invalid is not merely the determination that some inequality results from a classification but whether there exists any rational and reasonable justification for the classification. *State v. Duffy* (1972), 54 Wis. 2d 61, 65, 194 N. W. 2d 624.

Only if the classification is arbitrary and has no reasonable purpose or reflects no justifiable public policy will the classification be held violative of constitutional guarantees of equal protection. *Simanco, Inc. v. Department of Revenue* (1973), 57 Wis. 2d 47, 57, 203 N. W. 2d 648.

This court has long required that any legislative classification must satisfy five criteria. These have recently been stated in *Dane County v. McManus* (1972),

55 Wis. 2d 413, 423, 198 N. W. 2d 667, and need not be set forth at length. The essential question posed by those standards—a question readily apparent from the facts of this, case—is whether there are any real differences to distinguish the favored class—those persons who perform and furnish the "design, planning, supervision of construction or construction" of improvements to real property—from other classes, such as materialmen, who are ignored by the statute, and owners and occupants, who are specifically excepted.

That the classification is constitutionally inappropriate is made clear by the language of Mr. Justice WALTER SCHAEFER of the Illinois Supreme Court in *Skinner v. Anderson* (1967), 38 Ill. 2d 455, 231 N. E. 2d 588. In that case, the Illinois Supreme Court held a statute, almost identical to sec. 893.155, Stats., unconstitutional. While Mr. Justice SCHAEFER directed his language to the violation of the Illinois constitution's prohibition of special and local acts, the opinion discusses the impropriety of the Illinois classification that accorded special immunities to architects and contractors. Mr. Justice SCHAEFER stated:

"The effect of section 29 of the Limitations Act is to grant to architects and contractors a special or exclusive immunity. . . .

"If, as the defendant suggests, the objective of the statute is to require that trials of actions based upon defects in construction be held within a relatively short time after the work is completed, that objective is achieved . . . in a discriminatory fashion. . . .

". . . of all those whose negligence in connection with the construction of an improvement to real estate might result in damage to property or injury to person more than four years after construction is completed, the statute singles out the architect and the contractor, and grants them immunity. It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the archi-

tect or contractor is in fact responsible. Not only is the owner or person in control given no immunity; the statute takes away his action for indemnity against the architect or contractor.

"The arbitrary quality of the statute clearly appears when we consider that architects and contractors are not the only persons whose negligence in the construction of a building or other improvement may cause damage to property or injury to persons. If, for example, four years after a building is completed a cornice should fall because the adhesive used was defective, the manufacturer of the adhesive is granted no immunity. And so it is with all others who furnish materials used in constructing the improvement. But if the cornice fell because of defective design or construction for which an architect or contractor was responsible, immunity is granted. It can not be said that the one event is more likely than the other to occur within four years after construction is completed." (Pp. 459, 460)

The Hawaiian Supreme Court in *Fujioka v. Kam* (1973), 55 Hawaii 7, 514 Pac. 2d 568, also struck down as unconstitutional a statute that provided protection to "any registered and/or duly licensed person performing or furnishing professional or licensed services in the design, planning, supervision, or observation of construction or construction" of improvements to real property after ten years. The Supreme Court of Hawaii said:

". . . the statute on one hand grants immunity to the engineer and the contractor, who should and would be, but for the statute, primarily responsible for the injuries. On the other hand, the owners are burdened with the liability for the damages proximately caused by the negligence of the engineer and the contractor for the reason that, under the common law rule in this jurisdiction, the owners are under a duty to use reasonable care for the safety of all persons reasonably expected to be upon the premises . . . .

"Stated another way, the cause of the injuries is the same, the plaintiff is the same and the injuries are the same—but under the statute the plaintiff may not recover

from the engineer and the contractor even though the negligence of the engineer and the contractor may have been the sole proximate cause of the injuries suffered by the plaintiff. However, the plaintiff may recover damages from the owners, and the owners will have no right to have the engineer and the contractor reimburse or contribute to them the amount of damages they are required to pay the plaintiff. We are unable to see any rational basis for treating the engineer and the contractor differently from the owners under the same circumstances.

"It is clear that the classification does not rest upon some reasonable consideration of differences (between the classes under the same circumstances), which have a fair and substantial relation to the object of the legislation. Nor is the classification founded upon a reasonable distinction or difference necessitated by state policy. A statute making such an unsupportable classification fails to meet the requirements of the equal protection guaranty. *Morey v. Doud*, 354 U. S. 457, 465–469, 77 S. Ct. 1344, 1 L. Ed. 2d 1485 (1957). . . .

". . .

". . . it is clear that the statute calls for arbitrary and capricious discrimination and must therefore be declared an invidious discrimination violative of the equal protection guaranty." (Pp. 571, 572)

We find the rationale of *Skinner* and *Fujioka* persuasive and applicable to the interpretation of sec. 893.155, Stats., and the facts of this case. We adopt their position and conclude that the legislative classification that gives special protection to the protected group is unreasonable. While there are public policy reasons that might justify a limitations period that takes into consideration those who are engaged in the construction business, there appears no reason why only a very restricted class of those thus occupied is protected by the statute.

As pointed out by Mr. Justice SCHAEFER, it is ludicrous to permit a recovery against a manufacturer of a negli-

gently formulated mortar or adhesive, but to deny a recovery against an architect who negligently designed a cornice or facade so that its fall was inevitable.

We have carefully examined those cases cited by the defendant which in other jurisdictions have sustained statutes similar to sec. 893.155, Stats.

Defendant relies on *Josephs v. Burns & Bear* (Ore. 1971), 260 Ore. 493, 491 Pac. 2d 203. The statute there (ORS 12.115 (1)), however, had little similarity to sec. 893.155, Stats. ORS 12.115 (1) provided:

"In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

That statute poses no question of equal protection of the laws, for the immunity is accorded to any alleged tort-feasor after the passage of ten years. The case is irrelevant to the question of equal protection. While the case is of interest since it ties the defendant's act, rather than the plaintiff's injury, to the commencement of limitation, the relevance of the case, in view of Wisconsin's theory of the accrual of a cause of action, is not explained.

The defendant also relies on *Rosenberg v. Town of North Bergen* (1972), 61 N. J. 190, 293 Atl. 2d 662, and *Carter v. Hartenstein* (Ark. 1970), 455 S. W. 2d 918. Those cases together with *Yakima Fruit v. Central Heating* (1972), 81 Wash. 2d 528, 503 Pac. 2d 108, do indeed support the defendant's contention that sec. 893.155, Stats., is constitutional. None of those three cases is persuasive. Each of them recites the truism that the legislature can make reasonable classifications of persons or things and accord different treatment to different classes. None of these cases, however, justify the special immunity accorded to the protected class but denied to others similarly situated. The cases relied

upon, which fail to find statutes similar to sec. 893.155 unconstitutional, do not come to grips with the real problem presented—what factors distinguish the favored class so that it requires or deserves an immunity not accorded others who appear to be similarly situated.

The cases relied upon by the defendant to sustain the constitutionality of sec. 893.155, Stats., are not persuasive, and we reject them.

While we find arguable merit in the argument we posed in *Rosenthal, i.e.,* that sec. 893.155, Stats., denies a remedy for a legislatively recognized right under art. I, sec. 9, of the Wisconsin Constitution,[1] we do not rest our decision on that aspect of possible unconstitutionality. Nevertheless, it would appear that, were sec. 893.155 otherwise constitutional, a plaintiff similarly situated to the plaintiffs herein would be foreclosed from any redress before any injury had occurred. *See: Diana Shooting Club v. Lamoreux* (1902), 114 Wis. 44, 58, 89 N. W. 880. Sec. 893.155 appears to abrogate a remedy for a very real wrong. *See: Rosenthal, supra.*

We conclude that the statute relied upon in the defendant's demurrer is unconstitutional. Accordingly, the demurrer must be overruled. The trial judge reached that result, but for a reason we have rejected. The order of the trial court is, however, affirmed. The cause of action is not barred by the statute. Sec. 893.155, Stats., that purports to do so, is unconstitutional.

*By the Court.*—Order affirmed, and cause remanded for the purpose of permitting the defendant to answer or otherwise respond to the complaint.

---

[1] **"Remedy for wrongs.** SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."