**Frank A. BEARD and Edith F. Beard, Plaintiffs-Appellants,**

**v.**

**J.I. CASE COMPANY, a Delaware Corporation, and Tenneco, Inc., a Delaware Corporation, Defendants-Appellees.**

No. 86–1484.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1986.

Decided July 6, 1987.

Rehearing and Rehearing En Banc Denied Aug. 5, 1987.

James J. Kriva, Kasdorf, Lewis & Swietlik, S.C., Milwaukee, Wis., for plaintiffs-appellants.

Frank A. Scherkenbach, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for defendants-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges, and SWYGERT, Senior Circuit Judge.

FLAUM, Circuit Judge.

Frank Beard, a Tennessee farmer, was seriously injured when he became entangled in the rollers of a cornpicker manufactured by the defendant. Six months after the accident, Beard and his wife filed this products liability action in federal district court in Wisconsin. The court held that a Wisconsin court would apply the Tennessee Products Liability Act—including its period of repose, which bars any action for a personal injury caused by a product that was sold by the manufacturer more than ten years before the filing of the action. Applying Tennessee law, the court concluded that the action was time-barred, and therefore entered judgment for the defendants.

We conclude that the judgment of the district court must be reversed. The timeliness of the Beards' action is governed by the Wisconsin borrowing statute. We believe that in order to avoid a potential conflict with the Remedy for Wrongs provision of the Wisconsin Constitution, the Wisconsin Supreme Court would construe the borrowing statute to require use of Tennessee's period of limitations, but not its period of repose.

I.

While working on his farm in Tennessee, Frank Beard was seriously injured when both of his arms and one of his legs became caught between the rollers of a cornpicker. All three of Beard's injured limbs were later amputated. The accident occurred on November 9, 1981. Six months later, Beard and his wife filed this diversity action against the manufacturer of the cornpicker, the J.I. Case Company, and its parent corporation, Tenneco Inc., in the United States District Court for the Eastern District of Wisconsin. The Beards alleged that the defendants had been negligent and were strictly liable for defectively designing the cornpicker and the rollers.

They further alleged that the defective design work had occurred in Wisconsin and that the action was, therefore, governed by Wisconsin law.

The defendants subsequently moved for summary judgment on the ground that the Wisconsin borrowing statute, Wis.Stat. Ann. § 893.07 (West 1983), barred the action. The statute provides that no action may be maintained in a Wisconsin court on a "foreign cause of action" if the "foreign period of limitations which applies has expired." *Id.* The defendants argued that the borrowing statute required the use of the period of limitation and the period of repose[1] contained in the Tennessee Products Liability Act, Tenn.Stat. § 29–28–103(a) (1980 & Supp.1983). The Tennessee statute bars any products liability action not brought within six years of the injury (the period of limitation) and within ten years "from the date on which the product was first purchased for use or consumption" (the period of repose). *Id.* Because the cornpicker was first purchased in 1950, the defendants argued that the Tennessee period of repose barred the action.

The plaintiffs opposed the defendants' motion for summary judgment, arguing that the Wisconsin borrowing statute mandated the use of foreign periods of limitation, but not foreign periods of repose.

The district court granted partial summary judgment for the defendants. The court declined to resolve the question of whether the Wisconsin borrowing statute required the use of the Tennessee period of repose. Rather, the court stated that Tennessee

law governed liability, and that "[u]nder general choice of law principles," the Tennessee period of repose applied "because Tennessee regards its statute of repose as substantive law." *Beard v. J.I. Case Co.,* No. 82 C 0531, slip op. at 5 (E.D.Wis. Feb. 21, 1985) (decision and order). The court concluded that the Tennessee period of repose barred the plaintiffs' claims that the cornpicker was defective. *Id.* at 8.[2]

## II.

At the outset, we must determine our standard of review. Conflict of laws cases present both questions of law, and mixed questions of law and fact. As a general rule, "such determinations are independently reviewable by an appellate court." *Schuneman v. United States,* 783 F.2d 694, 699 (7th Cir.1986) (citation omitted). However, we have recognized that district court decisions construing the law of the state in which it sits are entitled to some deference. *See, e.g., Moore v. Tandy Corp.,* 819 F.2d 820, 823 (7th Cir.1987). *But see Fassett v. Delta Kappa Epsilon (New York),* 807 F.2d 1150, 1157 (3d Cir. 1986) (circuit court has plenary review over district court's interpretation of the law of the state in which it sits); *In re McLinn,* 739 F.2d 1395 (9th Cir.1984) (*en banc*) (rejecting deference in favor of plenary review of questions of state law). We give weight to these decisions because we presume that a district judge is likely to have a special familiarity with the law of the state in which he or she sits.[3]

1. A period of limitation bars an action if the plaintiff does not file suit within a set period of time from the date on which the cause of action accrued. In contrast, a period of repose bars a suit a fixed number of years after an action by the defendant (such as manufacturing a product), even if this period ends before the plaintiff suffers any injury.

2. The court went on to rule that under Tennessee law the plaintiffs could pursue their claims that the picking rollers were defectively designed if the installation of this component had substantially reconditioned the cornpicker so as to render it a "new" product. *Id.* at 9–10. The plaintiffs' claims concerning the picking rollers were tried to a jury. At the close of the trial, the court directed the jury to answer a special

interrogatory asking whether the installation of the picking rollers constituted a "substantial reconditioning" of the cornpicker. The jury concluded that the installation of the rollers had not substantially reconditioned the cornpicker. Based on this factual finding, the court concluded that the Tennessee period of repose barred the claims regarding the rollers, and therefore entered judgment for the defendants. Because we conclude that the Tennessee period of repose is not applicable, we need not consider whether the district court correctly applied Tennessee law.

3. The presumption that a district court judge is especially familiar with the law of the state in which he or she sits, although important, is not as strong as the presumption that a district

We have never considered whether the deference generally due to district court decisions construing the law of the state in which it sits applies to decisions involving state choice of law questions. In resolving this issue, we note that choice of law cases typically involve a two-step process. First, the district court must determine which law a state court in the state in which the district court sits would apply. Second, the district court must resolve the case before it using the applicable law.

■ We conclude that district court decisions as to which law the courts of the state in which it sits would apply are due the same deference as other district court decisions interpreting that state's law. A state's conflicts law is a part of its total body of law. There is no reason to presume that the district court is any less familiar with its home state's conflicts law than with other parts of the law of that state.

■ The presumption of district court expertise does not always continue, however, once the court has determined which law to apply. If the court selects the law of the state in which it sits, its subsequent construction of that law is entitled to the usual deference. However, if the district court applies the law of a jurisdiction other than the state in which it sits, we do not show deference to its subsequent interpretation of that law because the district court is not likely to have any special familiarity with it. *See Kalmich v. Bruno,* 553 F.2d 549, 553 (7th Cir.), *cert. denied,* 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977) (declining to give deference to district court's interpretation of foreign law).

## III.

The Beards have appealed the district court's decision to grant partial summary judgment against them on their claims that the entire cornpicker was defective. We believe that the district court correctly applied Wisconsin conflict of laws principles in order to determine that Tennessee law governed the merits of the plaintiffs' claims. However, we conclude that the district court erred in looking to general conflicts principles, rather than to the Wisconsin borrowing statute, to determine what law governed the question of whether the action was time-barred. Applying Wisconsin law, we conclude that the borrowing statute requires the use of the Tennessee period of limitation, but not the Tennessee period of repose. Finally, we conclude that the Beards' action is not time-barred by the Tennessee period of limitations.

## A.

■ The district court held that, under Wisconsin conflicts principles, Tennessee law governed the issue of liability. Because the district court based this decision on Wisconsin conflicts law, we review this conclusion with deference.

The district court correctly observed that Tennessee had significant contacts with this litigation. The plaintiffs reside in Tennessee, the cornpicker and rollers were purchased in that state, and the accident occurred there. At the same time, the court also noted that the only undisputed contact that Wisconsin had with the litigation was the fact that the defendant J.I. Case Company maintains its corporate headquarters in that state. Although the parties disagreed as to whether the cornpicker was designed and manufactured in Wisconsin, the district court assumed it had been de-

judge, who has the opportunity to assess the credibility of witnesses, is in the best position to make factual findings. Accordingly, we have never held that the deference due district court decisions construing state law is so great that such decisions may only be overturned based on a finding that they are clearly erroneous. Rather, our decisions indicate that, in reviewing a district court's interpretations of the law of the state in which it sits, we must give due regard to the expertise of the district court, and should

exercise restraint before substituting our judgment for that of the trial court. *See, e.g., City of Clinton v. Moffitt,* 812 F.2d 341, 342 (7th Cir. 1987); *see also Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1370 (7th Cir. 1985) ("Although we give substantial weight to the interpretation of state law by a district judge who sits in that state, we cannot give it controlling weight; the parties are entitled to judicial review. . . ." (citations omitted)).

signed and manufactured outside the state. Based on these facts, the district court, applying Wisconsin's "center of gravity" approach, *see Heath v. Zellmer*, 35 Wis.2d 578, 596, 151 N.W.2d 664, 672 (1967), concluded that Tennessee law should apply.

The district court should have tried to resolve the disputed issue of whether the cornpicker had been designed and manufactured in Wisconsin before it entered partial summary judgment. This is a significant contact that might have affected the court's decision. Nonetheless, even if the cornpicker was designed and manufactured in Wisconsin, we would still uphold the district court's decision, under Wisconsin conflicts principles, to apply Tennessee law to determine liability. *See Air Products & Chemicals v. Fairbanks Morse, Inc.*, 58 Wis.2d 193, 206 N.W.2d 414 (1973) (Pennsylvania law applied in case in which Pennsylvania plaintiff sued, alleging that the defendant had defectively designed a product at its Wisconsin factory).

### B.

After concluding that Tennessee law applied, the district court went on to state that the applicable Tennessee law included the Tennessee period of repose because this period was "substantive." The district court based this decision on general conflicts principles, rather than Wisconsin law. Because the district court did not rely on Wisconsin law, we need not show deference to its legal conclusions. We conclude that the district court should have looked to the Wisconsin borrowing statute, rather than general conflicts principles, to determine whether to apply the Tennessee period of repose.

 A district court must apply the conflicts law of the state in which it sits. *Klaxon Company v. Stentor Electric Manufacturing Company*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Ellingsworth v. Chrysler*, 665 F.2d 180, 184 (7th Cir.1981). In this case, however, the district court did not base its decision to apply the Tennessee period of repose on Wisconsin law. Rather, the court relied on the Fifth Circuit's decision

in *Wayne v. Tennessee Valley Authority*, 730 F.2d 392 (5th Cir.1984), *cert. denied*, 469 U.S. 1159, 105 S.Ct. 908, 83 L.Ed.2d 922 (1985). *Wayne* was a diversity action brought in Mississippi. The *Wayne* court held that a Mississippi court would view Tennessee's period of repose as substantive. *See id.* at 400–02. Even if this is correct, it is irrelevant to the question of what a Wisconsin court would do. *See* Restatement (Second) of Conflict of Laws § 143, comment b (law of the forum state governs whether a foreign state's period of limitation or respose should be considered an integral part of the substantive right).

The Wisconsin courts have adopted the modern conflicts approach under which choice of law decisions are made on an issue-by-issue basis. Under this approach, the law of one state may govern liability while the law of another state may govern timeliness. *See, e.g., Air Products & Chemicals v. Fairbanks Morse*, 58 Wis.2d 193, 206 N.W.2d 414 (1973); *accord Office Supply Company v. Basic/Four Corp.*, 538 F.Supp. 776 (E.D.Wis.1982). Labeling Tennessee's period of repose as "substantive" did not resolve the question of which state's law governs the issue of timeliness. Rather, the district court should have looked to Wisconsin law to determine the manner in which it was to assess the timeliness of the action. *See Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977) (diversity court must apply the law of the state in which it sits in order to determine what state's law governs timeliness of an action). In Wisconsin, the manner in which courts are to determine the timeliness of a personal injury action in a conflicts case is governed by the borrowing statute.

### C.

 The Wisconsin borrowing statute, Wis.Stat.Ann. § 893.07 (West 1983), provides that a plaintiff may not maintain an action in a Wisconsin court on a "foreign cause of action" if the foreign "period of limitations" has expired. In *Johnson v. Deltadynamics*, 813 F.2d 944 (7th Cir.

1987), we held that, for purposes of the Wisconsin borrowing statute, a cause of action in tort is "foreign" if the injury giving rise to the action occurs outside of Wisconsin, *id.* at 945–46; *accord Guertin v. Harbour Assurance Co.*, 135 Wis.2d 334, 400 N.W.2d 56 (Ct.App.1986). *But cf. Office Supply Co. v. Basic/Four Corp.*, 538 F.Supp. 776 (E.D.Wis.1982) (applying conflicts analysis to determine where contract cause of action arose). Under *Deltadynamics*, because Beard was injured in Tennessee, the plaintiffs' claims are Tennessee causes of action for purposes of the borrowing statute. However, the plaintiffs argue (as they did in the district court) that Tennessee's period of repose does not constitute a "foreign period of limitations" within the meaning of the borrowing statute, and therefore need not be applied.[4]

*Deltadynamics* did not resolve the question of whether the Wisconsin borrowing statute requires the use of foreign periods of repose. In *Deltadynamics*, the plaintiff was injured in Indiana. We therefore looked to Indiana law to see if the "period of limitations" had expired. Like Tennessee, Indiana law contains a period of limitation and a period of repose. Under Indiana

law, a personal injury action is time-barred if not brought within two years of the accident (the limitation period) and within ten years after the original purchase of the product (the repose period). *See* Ind.Code Ann. § 33–1–1.5–5 (West 1983). In *Deltadynamics*, the plaintiff's claim was untimely under either standard. We therefore had no trouble concluding that the action was time-barred.

In contrast to *Deltadynamics*, in this case the plaintiffs' claims are timely under Tennessee's six-year period of limitations, but untimely under its ten-year period of repose. We are therefore confronted for the first time with the question of whether the Wisconsin Supreme Court would hold an action time-barred based solely on a foreign period of repose. Because the district court expressly declined to reach this issue, we must resolve the question *de novo*. We conclude that, ff faced with this question, the Wisconsin Supreme Court would construe its borrowing statute not to require the use of a foreign period of repose.

1.

In determining whether the Wisconsin Supreme Court would interpret the borrow-

---

**4.** The defendants suggest that the Wisconsin Supreme Court has previously held that a period of repose is a period of limitation. The defendants first note that in *United States Fire Insurance Company v. E.D. Wesley Company*, 105 Wis.2d 305, 313 N.W.2d 833 (1982), the court referred to a period of repose as a period of limitation, *see id.* at 310, 313 N.W.2d 836. However, these passing references by the court are not dispositive of the question before us. In *Wesley*, the court was concerned solely with Wisconsin's local law; it was not interpreting the words "period of limitations" as used in the borrowing statute. The defendants also contend that in *Central Mutual Insurance Company v. H.O., Inc.*, 63 Wis.2d 54, 216 N.W.2d 239 (1974), a case governed by the borrowing statute, the Wisconsin Supreme Court applied North Carolina's period of limitation without regard to whether it was a period of repose or limitation. This is plainly incorrect. The court carefully noted that, although the then-current North Carolina statute contained a period of repose, Central Mutual's claims were governed by an earlier North Carolina statute that contained only a period of limitation. *See id.* at 57–58, 216 N.W.3d at 240.

Because the Wisconsin Supreme Court has not defined "period of limitations" as used in

the borrowing statute, we are required to determine how the court would define the term if it were faced with this question. The possibility exists that the court might hold that the borrowing statute requires the use of any provision that the jurisdiction in which the cause of action accrues would consider to be a period of limitation. However, we do not believe that the court would take this view. The Wisconsin Supreme Court has firmly rejected the concept of *renvoi*, under which a court must apply the law of a foreign state as if it were a court of that state. *See Conklin v. Horner*, 38 Wis.2d 468, 484 n. 10, 157 N.W.2d 579, 587 n. 10 (1968); *Haumschild v. Continental Casualty Company*, 7 Wis.2d 130, 141, 95 N.W.2d 814, 820 (1959). Rather, the Wisconsin Supreme Court has looked to Wisconsin law to determine the manner in which the law of other states is to be applied. In a similar manner, we believe that the Wisconsin Supreme Court would look to Wisconsin law— rather than to that of Tennessee—to determine the meaning of the words "period of limitations" as used in the Wisconsin borrowing statute. *Cf. Deltadynamics*, 813 F.2d at 945 (applying Wisconsin law to determine that a claim resulting from an injury in Indiana was an "Indiana cause of action").

ing statute to mandate the use of a foreign period of repose, we are aided by several decisions from that court. The Wisconsin Supreme Court has repeatedly questioned the constitutionality of statutes of repose under the "Remedy for Wrongs" provision of the state constitution, Wis. Const. Art. I § 9.[5] In order to avoid any possible conflict with this provision, the court has repeatedly construed Wisconsin statutes in a manner that would avoid barring plaintiffs' claims.[6]

The Wisconsin Supreme Court has demonstrated its concern with the Remedy for Wrongs provision—and its willingness to construe a Wisconsin statute to avoid any possible conflict with that provision—in a series of cases concerning the state's Real Estate Improvement Statute, Wis.Stat.Ann. § 893.155 (West 1983) (amended and recodified at § 893.89 (West 1983)). This statute contains a period of repose. Under its terms, no action may be maintained against an architect or builder based on his or her real estate improvement services "more than six years after the performance or furnishing of such service or construction." *Id.*

The Wisconsin Supreme Court first construed the Real Estate Improvement Statute in *Rosenthal v. Kurtz,* 62 Wis.2d 1, 213 N.W.2d 741 (1974). In *Rosenthal,* the defendants provided architectural services to the plaintiffs in 1963. Seven years later, in 1970, the roof designed by the defendants began to sag. The plaintiffs filed suit less than a year later, alleging that the defendants had been negligent in their design work. The architects subsequently moved to dismiss, asserting that the claim was barred by the six year period of repose. The trial court granted the motion. On appeal, the Wisconsin Supreme Court reversed.

The Wisconsin Supreme Court acknowledged that the legislature had intended to bar any suit commenced more than six years after a defendant has rendered its final services, *see id.* at 7, 213 N.W.2d at 744, and that, under this interpretation, the plaintiffs' action was time-barred. However, the court declined to adopt this construction. The court explained that the plaintiffs' cause of action did not accrue until 1970, when they were first injured. *Id.* If the legislative intent were implemented, the court observed, the six-year repose period, which ran out in 1969, would "bar[ ] the right to sue before it arises." *Id.* This, the court stated, raised "a serious constitutional question" under the Remedy for Wrongs provision of the state constitution. *Id.* at 8, 213 N.W.2d at 744.

Rather than comply with the intent of the legislature, the court stated that it was "obligated" to interpret the Real Estate Improvement Statute in a manner that would allow the court to avoid confronting the constitutional question. *Id.* at 11–12, 213 N.W.2d at 746. The court did so, holding that the six-year repose period had not begun until 1967, when all construction had been completed on the plaintiffs' building, rather than in 1963, when the defendants had provided their services. The court was thereby able to conclude that the action, brought in 1971, was not time-barred.

Despite the Wisconsin Supreme Court's efforts to construe the Real Estate Improvement Act in a manner that would avoid having to resolve the constitutionality of the statute of repose, the court was faced squarely with this question in *Kallas Millwork Corp. v. Square D Company,* 66 Wis.2d 382, 225 N.W.2d 454 (1975). In *Kallas,* the defendant installed a water line on the plaintiffs' property in 1952. Sixteen years later, in 1968, the water line ruptured, and the plaintiffs filed suit soon thereafter. Unlike in *Rosenthal,* in *Kallas*

**5.** This provision guarantees "Every person [a] ... certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character...." *Id.*

**6.** The plaintiffs do not argue that application of a foreign period of repose does in fact violate the Wisconsin Constitution, and we express no

opinion on this question. The issue before us is only whether the borrowing statute requires the use of foreign periods of repose. Following the practice of the Wisconsin Supreme Court, we look to the Wisconsin Constitution in order to provide a backdrop against which to interpret the statute.

no interpretation of the facts could bring the date of injury within the six-year period provided by the statute. The court, therefore, had no choice but to hold that because "the statute [of repose] deprives a plaintiff of a remedy [i.e., the right to maintain a cause of action] that is recognized by the laws of the state ... [t]he statute is ... unconstitutional under Art. I, Sec. 9 of the Wisconsin Constitution." *Id.* at 384, 225 N.W.2d at 455.[7]

After the *Kallas* decision, the Wisconsin legislature amended the Real Estate Improvement Statute, *see* Wis.Stat.Annot. § 893.89 (West 1983). The legislature retained the six-year repose period, but made a number of technical changes designed to address some of the court's constitutional concerns. In *United States Fire Insurance Company v. E.D. Wesley Company,* 105 Wis.2d 305, 313 N.W.2d 833 (1982), the Wisconsin Supreme Court was asked again to consider whether the amended repose provision violated the Remedy for Wrongs provision. In order to comply with the "fundamental rule of statutory construction that a court is required to avoid construing a statute in such a way as would render that statute unconstitutional," *id.* at 319, 313 N.W.2d at 840, the court again construed the statute so as not to bar the plaintiff's claim, and was thereby able to avoid resolving the constitutional issue, *id.* at 320, 313 N.W.2d at 840.

2.

The Wisconsin Borrowing Statute raises the same "grave constitutional concerns," *Wesley,* 105 Wis.2d at 812, 313 N.W.2d at 837, as the Real Estate Improvement Statute. Under Wisconsin conflicts law, a Wisconsin resident injured outside the state will often be able to bring an action in the Wisconsin courts in which the merits of the claim are governed by Wisconsin law. *See, e.g., Wilcox v. Wilcox,* 26 Wis.2d 617, 133

N.W.2d 408 (1965) (Wisconsin law applied to claim by Wisconsin resident injured in Nevada). However, under the borrowing statute, the "period of limitations" provided by the law of the state in which the injury occurred governs whether the action is timely. *See Deltadynamics,* 813 F.2d at 945–46. If the Wisconsin borrowing statute requires a Wisconsin court to use an out-of-state period of repose, then a Wisconsin plaintiff may have his or her Wisconsin law claim time-barred even before it accrues. This is the result that the Wisconsin Supreme Court held to be barred by the Remedy for Wrongs provision in *Kallas Millwork Corp. v. Square D Company,* 66 Wis.2d 382, 225 N.W.2d 454 (1975). *Compare Kennedy v. Cumberland Engineering Company,* 471 A.2d 195, 197–201 (R.I. 1984) *and Heath v. Sears, Roebuck & Company,* 123 N.H. 512, 464 A.2d 288, 294–96 (1983) *and Lankford v. Sullivan, Long & Hagerty,* 416 So.2d 996, 1004 (Ala. 1982) (invalidating products liability periods of repose contained in the laws of their respective states under Remedy for Wrongs provisions of their respective state constitutions). *But compare Jones v. Five Star Engineering,* 717 S.W.2d 882, 883 (Tenn.1986) (upholding products liability period of repose under "Open Courts" provision of the state constitution).

■ In this case, the plaintiffs are not citizens of Wisconsin. However, that fact does not alleviate the potential constitutional problem. The Wisconsin Supreme Court has made clear that the Remedy for Wrongs provision "says *every person*, it does not limit its protection to citizens." *Arteaga v. Literski,* 83 Wis.2d 128, 133, 265 N.W.2d 148, 150 (1978) (emphasis in the original). Indeed, in the *Wesley* case, *see supra* at 1102, the Wisconsin Supreme Court construed the Real Estate Improvement Act to avoid a conflict with the Reme-

---

7. Although recognizing the statute's unconstitutionality under the Remedy for Wrongs provision, the court noted that this was not determinative because the statute also violated the Equal Protection Clauses of the state and federal constitutions. *Id.* 66 Wis.2d at 388–93, 225 N.W.2d at 458–60. This, however, does not diminish the court's conclusion that the statute

violated the Remedy for Wrongs provision. *See United States Fire Insurance Company v. E.D. Wesley Company,* 105 Wis.2d 305, 313, 313 N.W.2d 833, 837 (1982) (citing *Kallas* for the proposition that the statute of repose violated the Remedy for Wrongs provision of the state constitution).

dy for Wrongs provision even though the plaintiff was a foreign corporation that had filed suit against a Wisconsin company.

The fact that the law of Tennessee will govern liability does not lessen the possibility that application of the period of repose might violate the Remedy for Wrongs provision. Once a legal right enforceable in the courts of Wisconsin is created, the Remedy for Wrongs provision applies regardless of the original source of the right. *See New York Insurance Company v. State,* 192 Wis. 404, 211 N.W. 288 (1926), *writ of error dismissed,* 276 U.S. 602, 48 S.Ct. 323, 72 L.Ed. 726 (1928). In *New York* the plaintiff filed suit in Wisconsin. Although New York law governed the plaintiff's right to recover, the trial court found the action untimely under Wisconsin's period of limitations. The plaintiff appealed, arguing that the dismissal violated the Remedy for Wrongs provision. On appeal, the Wisconsin Supreme Court observed that the Remedy for Wrongs provision did give the plaintiff a right to maintain an action in the Wisconsin courts. *See id.* at 410, 211 N.W. at 291. The fact that the plaintiff's right to recovery was based on the law of another state was not relevant. However, the court went on to conclude that the period of limitations applicable in that case did not violate the constitutional provision because it had not completely deprived the plaintiff of its right to litigate the merits of its claims in the Wisconsin courts.

In this case, the plaintiffs' Tennessee law claims are enforceable in the courts of Wisconsin. However, if the Wisconsin borrowing statute mandates the use of Tennessee's period of repose, the plaintiffs will have no opportunity to litigate the merits of their claims in the Wisconsin courts.

Therefore, there is a significant possibility that the borrowing statute violates the Wisconsin Constitution. In order to avoid that possibility, we follow the example of the Wisconsin Supreme Court and seek to construe the statute in a manner that avoids the risk of it being held unconstitutional. *See Wesley,* 105 Wis.2d at 319, 313 N.W.2d at 840; *Rosenthal,* 62 Wis.2d at 11–12, 213 N.W.2d at 746.

3.

In seeking to interpret the Wisconsin borrowing statute in a manner that will prevent a possible conflict with the Wisconsin Constitution, we begin with the words of the statute. The statute provides that a plaintiff may not maintain a suit on a foreign cause of action if the foreign "period of limitations" has run. Wis.Stat.Ann. § 893.07 (West 1983). The plaintiffs suggest that a foreign period of limitation means just that: a period of limitation, not a period of repose. This is a reasonable construction of the statute that will eliminate any possibility of it running afoul of the restrictions imposed by the Remedy for Wrongs provision of the Wisconsin Constitution. We therefore accept this interpretation and conclude that, in this case, the Wisconsin borrowing statute mandates the use of the six-year period of limitation contained in the Tennessee Products Liability Act, but does not require the use of Tennessee's ten-year period of repose.[8]

D.

The timeliness of the plaintiffs' claims is governed by the Wisconsin borrowing statute. Because Frank Beard was injured in Tennessee, the Beards' claims are Tennessee causes of action for purposes of the borrowing statute. We therefore look to

8. This is not the first time that we have had to interpret Wisconsin law to avoid a potential conflict with the Remedy for Wrongs provision. In *Neubauer v. Owens-Corning Fiberglas Corp.,* 686 F.2d 570 (7th Cir.1982), *cert. denied,* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983), we were called upon to determine when the Wisconsin statute of limitations for personal injuries begins to run against causes of action based on asbestos-caused diseases. We noted that "the Wisconsin constitution may prevent

our construing the statute of limitations to cut off the plaintiffs' right to sue for damages prior to a time when the plaintiff could prove the existence of an injury." *Id.* at 573 (*citing Kallas* and *Rosenthal* ). We therefore concluded that the limitation period did "not necessarily begin at the time of the plaintiff's exposure to asbestos," *id.* at 574, but rather, that it began to run when the injury first started to manifest itself, *id.* at 577.

Tennessee's period of limitations to determine whether the plaintiffs' action is time-barred. It is not disputed that the plaintiffs filed suit six months after Beard's injury. This is well within Tennessee's six-year period of limitation. We therefore conclude that the district court erred in granting summary judgment for the defendants on the question of whether the plaintiffs' claims concerning the cornpicker as a whole were time-barred.

We recognize that under our interpretation of the borrowing statute, a suit based on Tennessee law may be brought in Wisconsin even though the action could not be maintained in Tennessee. However, this is an inevitable consequence of the modern practice of deciding conflicts cases on an issue-by-issue basis. *See* Reese, *Dépecage*, 73 Colum.L.Rev. 58, 73–75 (1973). The Wisconsin Supreme Court has not shied away from this outcome. *See Air Products & Chemicals v. Fairbanks Morse*, 58 Wis.2d 193, 206 N.W.2d 414 (1973) (claim governed by Pennsylvania law not barred even though the Pennsylvania period of limitations had run).

■ We believe that the result that we have reached accords with Wisconsin policy. *See Griffin v. McCoach*, 313 U.S. 498, 503–07, 61 S.Ct. 1023, 1025–27, 85 L.Ed. 1481 (1941) (In conflicts cases, diversity court must not enforce foreign law "so contrary to the law of the forum as to subvert the forum's view of public policy."). The Wisconsin Supreme Court has made clear that Wisconsin has an interest in protecting out-of-state plaintiffs who sue Wisconsin defendants. For example, in *Air Products, supra,* the plaintiff, an out-of-state corporation with its principal place of business in Pennsylvania, filed suit in Wisconsin, alleging that the defendant had deficiently designed certain equipment in Wisconsin. The Wisconsin Supreme Court declined to apply Pennsylvania's four-year period of limitation, under which the action would have been untimely. The court explained that Pennsylvania had no "legitimate interest" in applying its period of limitation in a case in which the plaintiff was a Pennsylvania resident. *Air Products*, 58 Wis.2d at 202–03, 206 N.W.2d at 419.[9] Indeed, the court went on to note that by adopting a six-year period of limitation, "the legislature [had] determined that the interests of Wisconsin are best served by a longer period." *Id.; see also Central Mutual Insurance v. H.O., Inc.*, 63 Wis.2d 54, 216 N.W.2d 239 (1974) (North Carolina plaintiff seeking recovery for property damage that had occurred in North Carolina permitted to maintain an action against a Wisconsin manufacturer, even though the action was untimely under North Carolina law).

Although Wisconsin's policy favoring the maintenance of actions is strong, we recognize that it is not absolute. By enacting the borrowing statute, the Wisconsin legislature has also acknowledged the importance of accommodating the concerns of other states. *Deltadynamics* and *Guertin,* the two most recent cases interpreting the borrowing statute, reflect this latter concern. However, Wisconsin's interest in providing a forum is more seriously implicated in this case, because the plaintiffs may be denied any opportunity to litigate the merits of their claims even though they

---

**9.** The Supreme Court has previously stated that "the Full Faith and Credit Clause does not compel the forum state to use the period of limitations of a foreign state." *Wells v. Simonds Abrasive Company*, 345 U.S. 514, 517, 73 S.Ct. 856, 858, 97 L.Ed. 1211 (1953); *see Clay v. Sun Insurance Office, Ltd.*, 377 U.S. 179, 181–83, 84 S.Ct. 1197, 1198–99, 12 L.Ed.2d 229 (1964). However, the Court has more recently held that the Constitution limits the degree to which the courts of the forum state may disregard a foreign state's law when resolving claims that arose in the foreign state. *See Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 2977–81, 86 L.Ed.2d 628 (1985). This limitation may well apply to foreign laws governing the timeliness of an action, thereby calling into question the broad language in *Wells* and *Clay.* Nevertheless, we need not decide whether *Wells* and *Clay* have survived *Shutts*. Although the accident giving rise to this lawsuit occurred in Tennessee, all of the parties agree that the timeliness of this action is governed by the Wisconsin borrowing statute. Because the defendants have not contested the use of the borrowing statute, they have waived any constitutional objections to the use of the period of limitation that the borrowing statute directs the Wisconsin courts to apply. *See Bailey v. Bicknell Minerals*, 819 F.2d 690, 692 (7th Cir.1987).

promptly filed a complaint. Based on its previous decisions, we believe that, if faced with the issue before us, the Wisconsin Supreme Court would find that the plaintiffs' claims are not time-barred.

## IV.

The district court erred in applying the Tennessee Products Liability Act's ten-year period of repose. The decision of this district is therefore REVERSED and the case is REMANDED.