283 Wis.2d 1 (2005)
2005 WI 99
698 N.W.2d 794
Elaine Marie KOHN, Ronnie A. Kohn and Lori K. Kohn, Plaintiffs-Appellants,
PHYSICIANS PLUS INSURANCE CORPORATION, Plaintiff,
v.
DARLINGTON COMMUNITY SCHOOLS, EMC Insurance Company, Standard Steel Industries, Inc., and Medalist Industries, Inc., Defendants,
ILLINOIS TOOL WORKS, INC., Defendant-Respondent-Petitioner.
No. 2003AP1067.
Supreme Court of Wisconsin.
Oral argument April 29, 2005.
Decided July 1, 2005.
For the defendant-respondent-petitioner there were briefs by William H. Levit, Jr., Michael B. Apfeld, Josh Johanningmeier and LaFollette, Godfrey & Kahn, Madison, and oral argument by Michael B. Apfeld.
*9 For the plaintiffs-appellants there was a brief by David E. Lasker, and Lasker Law Offices, L.L.C., Madison, and oral argument by David E. Lasker.
An amicus curiae brief was filed by Eric Englund, Madison, on behalf of the Wisconsin Insurance Alliance.
*8 ¶ 1. JON P. WILCOX, J.
The plaintiffs, Elaine, Ronnie, and Lori Kohn (the Kohns), seek review of an unpublished per curiam court of appeals decision, Kohn v. Darlington Community Schools, No. 2003AP1067, unpublished slip op. (Wis. Ct. App. July 1, 2004). The court of appeals reversed an order of the Lafayette County Circuit Court, Daniel L. LaRocque, Judge, granting summary judgment to the defendant, Illinois Tool Works, Inc. (ITW).

I. FACTS
¶ 2. The following facts are undisputed. On September 29, 2000, Elaine Kohn and her then four-year-old daughter, Lori Kohn, attended the homecoming football game at Darlington High School. At approximately 2:30 p.m., Lori fell through the space at the foot of her seat in the home bleachers to the ground 15 feet below, sustaining injuries.
¶ 3. The bleachers in question were purchased by Darlington Community Schools (Darlington) in 1969 from Standard Steel Industries, Inc. (Standard) at a cost of $16,167.[1] Standard agreed to ship the materials for the bleachers and supervise their construction.
¶ 4. The home bleachers are 15 rows tall and over 100 feet long. They contain nearly 1500 aluminum seats and a 50-inch-wide walkway elevated 30 inches above the ground. The bleachers are located on one side of the Darlington High School football stadium and track *10 field.[2] A press box and wheelchair accessible ramp were later added to the bleachers.
¶ 5. Darlington inspected the bleachers each year after construction and performed necessary repairs, including repainting, external improvements to the press box, and replacement of the walkway planks, footboards, and side rails. The bleachers were never moved or taken apart. The parties do dispute whether the bleachers are anchored into the ground.[3]

II. PROCEDURAL POSTURE
¶ 6. On August 15, 2001, the Kohns filed suit against Darlington and its insurer, contending that Darlington violated its duty of care to the plaintiffs, that the bleachers were negligently designed, constructed, and/or maintained, and that the bleachers were inherently unsafe and posed a hazardous condition to frequenters of the premises. On April 15, 2002, the Kohns filed an amended complaint against ITW and its predecessors in interest. The Kohns alleged that the bleachers were in a dangerously defective condition when they left the control of Standard and that the product caused harm to the Kohns. The Kohns further alleged that as a result, Standard and its successors were subject to strict liability.
¶ 7. On August 2, 2002, ITW filed a motion for summary judgment seeking to dismiss the Kohns' action against it as time barred under Wis. Stat. § 893.89 *11 (2001-02).[4] In their brief in opposition, the Kohns argued that § 893.89 did not apply because their claim against ITW was a product liability claim, not a claim for improvement to real property. At the hearing on the motion, the Kohns also argued that the statute violated Article I, Section 9 of the Wisconsin Constitution, and the equal protection clauses of the federal and state constitutions.
¶ 8. The circuit court first ruled that the bleachers constituted an improvement to property as a matter of law, and that therefore the Kohns' claims against ITW were governed by the ten-year repose period set forth in § 893.89. Next, the circuit court held that the statute was not unconstitutional on equal protection grounds because the classifications within § 893.89 contained a rational basis. Finally, the circuit court ruled that the statute did not violate Article I, Section 9 of the Wisconsin Constitution, relying on this court's decision in Aicher v. Wisconsin Patients Compensation Fund, 2000 WI 98, 237 Wis. 2d 99, 613 N.W.2d 849. Accordingly, on February 15, 2003, the circuit court entered an order granting ITW's motion for summary judgment and dismissing all claims against ITW with prejudice.
¶ 9. The court of appeals in an unpublished per curiam opinion reversed. The court of appeals concluded that the bleachers did not constitute an improvement to real property because there was no evidence that the bleachers were anchored to the ground. Kohn, unpublished slip op., ¶ 7. The court of appeals explained: "The degree of physical annexation shown by the pictures [in the record] convinces us that the bleachers are not an improvement to real property." Id. *12 Thus, the court of appeals held that the Kohns' claims were governed by the three-year statute of limitation in Wis. Stat. § 893.54, rather than the ten-year period of repose in § 893.89.

III. ISSUES
¶ 10. Three issues are presented to this court. First, do the bleachers in question constitute an "improvement to real property" for purposes of § 893.89? Second, if so, does § 893.89 violate the "right to remedy" provision in Article I, Section 9 of the Wisconsin Constitution? Third, if the bleachers are an improvement to real property, does § 893.89 violate the equal protection clauses of the federal and state constitutions? We hold that the bleachers in question do constitute an improvement to real property for purposes of § 893.89. Further, we hold that § 893.89 does not violate Article I, Section 9 of the Wisconsin Constitution. Finally, we hold that § 893.89 does not violate the guarantee of equal protection in the federal and state constitutions.

IV. STANDARD OF REVIEW
¶ 11. This case comes to us on a motion for summary judgment.
This court reviews a circuit court's decision granting summary judgment independently, but we apply the same methodology as the circuit court. Smaxwell v. Bayard, 2004 WI 101, ¶ 12, 274 Wis. 2d 278, 682 N.W.2d 923. Pursuant to Wis. Stat. § 802.08(2), summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions *13 on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Therefore, "[s]ummary judgment should not be granted, `unless the facts presented conclusively show that the plaintiff's action has no merit and cannot be maintained.'" Smaxwell, 274 Wis. 2d 278, ¶ 12 (quoting Goelz v. City of Milwaukee, 10 Wis. 2d 491, 495, 103 N.W.2d 551 (1960)). In determining whether summary judgment was appropriately granted, "[w]e view the summary judgment materials in the light most favorable to the nonmoving party." Id.

Mayberry v. Volkswagen of Am., 2005 WI 13, ¶ 15, 278 Wis. 2d 39, 692 N.W.2d 226. Further, "[w]hen the facts are undisputed, the interpretation and application of a statute to these facts present a question of law appropriate for summary judgment." Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶ 9, 281 Wis.2d 300, 697 N.W.2d 417.
¶ 12. Whether an item is an "improvement to real property" under § 893.89 is a question of law that we review de novo. Kallas Millwork Corp. v. Square D Co., 66 Wis. 2d 382, 386, 225 N.W.2d 454 (1975) [hereinafter "Kallas"]. Likewise, whether a statute is unconstitutional is a question of law subject to de novo review. Funk v. Wollin Silo & Equip., Inc., 148 Wis. 2d 59, 61, 435 N.W.2d 244 (1989).

V. ANALYSIS

A. Improvement to Real Property
¶ 13. Section 893.89 is a statute of repose that sets forth the time period during which an action for *14 injury resulting from improvements to real property must be brought. It provides, in pertinent part:
(1) In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.
(2) Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property. This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.
Wis. Stat. § 893.89.
¶ 14. No one disputes that the installation of the bleachers at Darlington High School was substantially completed in 1969. The question is whether the bleachers constitute an "improvement to real property" under the statute. If they do, then the "exposure period" ended in 1979, and the Kohns' claims against ITW failed to accrue. Wis. Stat. § 893.89(1)-(2).
¶ 15. The parties dispute whether the bleachers are permanently anchored to the ground and whether this makes a difference in the analysis. The Kohns contend that the bleachers are not an improvement to real property because they are not anchored in the ground and are portable. The Kohns, like the court of appeals, rely on the "degree of physical annexation" of *15 the bleachers to support their argument. Plaintiffs' Br. at 12. The Kohns further contend that very little effort or expenditure was required to place the bleachers on the ground. They argue that the bleachers are simply "personal property resting upon the real estate" and are not "integral" to the usefulness of the property. Plaintiffs' Br. at 18. Finally, relying on this court's decision in Swanson Furniture Co. v. Advance Transformer Co., 105 Wis. 2d 321, 313 N.W.2d 840 (1982)[hereinafter "Swanson"], the Kohns assert that the bleachers are not an improvement to real property because they were not specifically designed or manufactured for use at Darlington High School.
¶ 16. ITW, in contrast, argues that the bleachers are an improvement to real property because the photographs in the record demonstrate that they are anchored into the ground. ITW also contends that even if there is insufficient evidence to conclude that the bleachers are anchored into the ground, they still constitute an improvement to real property. ITW argues that the bleachers are permanent as their permanency is a function of their purpose. ITW emphasizes that in the 30 years since they were erected, the bleachers have not been moved, and there is no evidence that they were ever intended to be moved. ITW also focuses on the size of the bleachers and the fact that they enhance the value and usefulness of the property. ITW states that it is significant that the bleachers are specifically adapted to the purpose for which the property is devoted. ITW also argues that the fact that the bleachers theoretically could be disassembled and moved is not dispositive, as most improvements to real estate, including the Eiffel Tower, can be disassembled and moved. Finally, ITW argues that the court of appeals inappropriately relied on All City Communication *16 Co. v. DOR, 2003 WI App 77, 263 Wis. 2d 394, 661 N.W.2d 845, and Massie v. City of Duluth, 425 N.W.2d 858 (Minn. Ct. App. 1988), to conclude that the bleachers here were not an improvement to property.
¶ 17. In Kallas, this court set forth the following test, based on a dictionary definition, for determining whether a given item qualifies as an improvement to real property: "`[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.'" Kallas, 66 Wis. 2d at 386 (quoted source omitted). See also U.S. Fire Ins. Co. v. E.D. Wesley Co., 105 Wis. 2d 305, 309, 313 N.W.2d 833 (1982)(accord). Applying this definition, the Kallas court concluded that a "high-pressure water pipe designed for fire protection, as a matter of law, was `an improvement to real property' ...." Kallas, 66 Wis. 2d at 386.
¶ 18. While the Kohns spend much time comparing the bleachers here to the water pipe in Kallas, the appropriate question is whether the bleachers satisfy the test set forth in Kallas. The test first requires a "permanent addition to or betterment of real property." The parties disagree as to whether the word "permanent" modifies both "addition to" and "betterment of" such that a non-permanent betterment qualifies under the first part of the definition. However, we need not decide whether a non-permanent betterment satisfies the first part of the test for an improvement to real property because we conclude that the bleachers here are permanent.[5]
*17 ¶ 19. The Kohns contend that the bleachers are not permanent because they are not anchored into the ground. While there may be a disputed issue of fact as to whether the bleachers are anchored into the ground, we conclude that this fact is not material to the question of whether the bleachers are "permanent" in this case. That is, we conclude that the bleachers here qualify as "permanent" regardless of whether they are anchored into the ground.
¶ 20. We disagree with the Kohns that "the degree of physical annexation" of the alleged improvement is dispositive. While the law of fixtures may focus on the *18 degree of annexation of a chattel to land, see All City Communication, 263 Wis. 2d 394, ¶ 13; Black's Law Dictionary 652 (7th ed. 1999), courts, applying a commonsense definition to the term "improvement to real property," have "viewed the term `improvement' as having broader significance than `fixture' and ha[ve] indicated that the term comprehends all additions and betterments to the freehold, including everything that permanently enhances the value of the premises." 63B Am. Jur. 2D Products Liability § 1631 (2d ed. 1997).[6] Therefore, a given item need not be actually physically annexed to the land in order to constitute a permanent addition to or betterment of property.
¶ 21. In assessing the permanency of property, it is appropriate to consider the nature of the alleged improvement and the intention of the party making the alleged improvement. 63B Am. Jur. 2D Products Liability § 1631 (2d ed. 1997); Garner v. Kinnear Mfg. Co., 37 F.3d 263, 267 (7th Cir. 1994) (noting that Illinois courts have provided the following criteria for determining whether an item constitutes an "improvement to real property": "whether the addition was intended to be permanent or temporary, whether it became an integral *19 component of the overall system and whether the value and use of the property was enhanced.") (emphasis added).[7]See also The American Heritage Dictionary of the English Language 1348 (3d ed. 1992) (defining "permanent" as "[n]ot expected to change in status, condition, or place").
¶ 22. We conclude that the bleachers at Darlington High School constitute a "permanent addition to" the Darlington High School stadium and track. First, examining the nature of the bleachers, we note that the home bleachers are a huge structure. They are 15 rows tall, over 100 feet long, and contain a 50-inch-wide walkway elevated 30 inches above the ground. They can seat nearly 1500 individuals. They adjoin a rather large press box and incorporate a wheelchair access ramp. While it is unclear whether they are anchored to the ground, they clearly are not readily moveable.
¶ 23. The Kohns focus on the fact that the bleachers can be disassembled and would not require any excavation to be removed. However, while the bleachers could theoretically be disassembled, that is true of almost any addition to property. Almost any structure that is assembled and installed can be dissembled and removed, even, as ITW artfully notes, a structure as large as the Eiffel Tower. See 63B Am. Jur. 2D Products Liability § 1631 (2d ed. 1997) ("[T]he fact that a[n] ... *20 improvement can be removed without harming the real property will not necessarily indicate that the ... item is not an improvement to real property."). We believe the more pertinent inquiry is whether the item can be readily dissembled and moved. See Massie, 425 N.W.2d at 861 (waterslide not an improvement because it was removed from small lake after every summer season for a number of years). Given the nature of the bleachers and the subsequent additions thereto, it cannot be disputed that it would require a significant amount of time and effort to completely disassemble them and remove them from the field.
¶ 24. While the Kohns rely on the Minnesota Court of Appeals' decision in Massie, that decision is entirely distinguishable and actually beneficial to ITW in light of the distinctions drawn in that opinion. Massie involved a 30-foot tall water slide installed in a shallow lake that was bolted to concrete pads. Id. at 859. "The slide was installed at the facility in 1974 and was used during the summers of 1975-83. At the end of each summer, the city would unbolt the slide from its base and apparently store it until the next season." Id.
¶ 25. The court concluded that the slide was not an improvement to real property, reasoning:
The water slide was not a permanent addition to the property. While it was bolted to concrete pads at the bottom of the pond, it was designed to be and was removed every winter for storage.... The slide was a removable piece of playground equipment.... The slide was only used at the Twin Ponds area for three months out of the year and was permanently removed from the area after the 1983 season. There has been no decrease in the capital value of the Twin Ponds facility due to its removal.
Id. at 861.
*21 ¶ 26. Here, in contrast, the bleachers have never been taken apart or moved, much less permanently removed for an entire season. They are certainly not the equivalent of "a removable piece of playground equipment." Id.
¶ 27. Further, it is quite apparent that the bleachers, unlike the slide in Massie, were never intended to be moved or taken apart. As evidence of this, we again note the length of time they have remained at Darlington High Schoolover 30 years. The fact that Darlington has constructed a large press box adjoining the bleachers is further evidence of the intent that the bleachers be permanent. Moreover, we note that Darlington has made significant improvements to the bleachers themselves, in the form of a wheelchair accessible ramp, new railings, and new footboards. Further evidence of the intended permanency of the bleachers is the fact that the utility of the stadium and track would be seriously diminished were the bleachers removed. In light of the above analysis, we do not find it significant that the bid contract Standard submitted to Darlington labeled the product as "portable bleachers." As such, we are satisfied that the bleachers consitutute "a permanent addition to" the property.
¶ 28. The second and third prongs of the test for an improvement to real property under Kallas is that the permanent addition to the property must "`enhance[] its capital value and ... involve[] the expenditure of labor or money and [be] designed to make the property more useful or valuable as distinguished from ordinary repairs.'" Kallas, 66 Wis. 2d at 386 (quoted source omitted). As these two prongs are interrelated, we shall consider them together.
¶ 29. Darlington contracted with Standard to provide the materials for the bleachers and supervise their *22 installation at a cost of $16,167. Thus, the installation of the bleachers clearly involved the expenditure of labor and a significant amount of money. Further, we conclude that the bleachers increase the capital value of the track and football stadium at Darlington High School and make the property more useful or valuable. It seems patently obvious that a football stadium and track with a set of bleachers is more useful and valuable than an empty field and track. Clearly, the school would not be able to attract as many spectators and charge the same admission fee to see a game or meet if there were no bleachers in the stadium, as far less people would be able to have a clear line of vision to the field. Finally, it cannot seriously be argued that the installation of the bleachers constituted "ordinary repairs." Therefore, we conclude that the bleachers in this case meet all of the requirements of the test for an improvement to real property set forth in Kallas.
¶ 30. The Kohns also argue that the bleachers are not an improvement to real property, based on our opinion in Swanson, because the bleachers were not specifically designed or manufactured for use at Darlington High School. The Kohns mischaracterize our opinion in Swanson. In Swanson, we did not even address the issue of what constitutes an improvement to real property, much less hold that the materials that comprise an addition to property must be specifically designed or manufactured for the project in question in order for the addition to qualify as an improvement to real property.
¶ 31. Swanson involved a suit against remote manufacturers of lighting fixtures that allegedly caused a fire. Swanson, 105 Wis. 2d at 323-24. The issue presented was whether the defendants fell within the category of defendants protected by a predecessor statute *23 to § 893.89, Wis. Stat. § 893.155 (1977). Id. at 324. Unlike § 893.89, the statute at issue in Swanson applied to "[a]ny person performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement to real property." Wis. Stat. § 893.155 (1977).[8] Thus, the issue in Swanson was not whether the lighting fixture at issue constituted an improvement to real property but whether the statute "applie[d] to manufacturers of a product and its component parts incorporated into an improvement to real property." Swanson, 105 Wis. 2d at 322.
¶ 32. We concluded that the defendants did not fall within the purview of the statute because they did not directly deal with Swanson and did not manufacture lighting fixtures for the improvement to Swanson's property. Id. at 324, 327-28. We therefore held that the statute was inapplicable to the remote manufacturers "[e]ven though the light fixture [in question] was an ultimate improvement to real property." Id. at 329. In other words, we specifically concluded that the light *24 fixture was an improvement to real property even though it was not specifically manufactured for Swanson's property. Thus, Swanson is not controlling here because it dealt with a different issue and a different statute. To the extent it is relevant, Swanson stands opposed to the Kohns' assertion that the materials utilized in an addition to property must be specifically manufactured for that property in order for the addition to be an improvement.
¶ 33. Therefore, we hold that the bleachers at Darlington High School constitute an "improvement to real property" for purposes of § 893.89. The bleachers qualify as an "improvement to real property" because they are a permanent addition to Darlington's real property that enhance its capital value, involved the expenditure of labor and money, and were designed to make the property more useful or valuable. Kallas, 66 Wis. 2d at 386.

B. Constitutionality of § 893.89
¶ 34. The Kohns argue that even if the bleachers constitute an improvement to real property under § 893.89, the statute is nonetheless inapplicable because it is unconstitutional. They argue that the statute violates Article I, Section 9 of the Wisconsin Constitution and the equal protection clauses of the state and federal constitutions.
¶ 35. Before addressing each argument, we set forth the deferential standard under which we review the constitutional validity of legislative enactments:

Statutes are presumptively constitutional. [Riccitelli v. Broekhuizen, 227 Wis. 2d 100, 119, 595 N.W.2d 392 (1999)]. The court indulges every presumption to sustain *25 the law if at all possible, and if any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality. State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis. 2d 32, 46-47, 205 N.W.2d 784 (1973).

To overcome this strong presumption, the party challenging a statute's constitutionality must demonstrate that the statute is unconstitutional beyond a reasonable doubt. State v. Hezzie R., 219 Wis. 2d 848, 863, 580 N.W.2d 660 (1998). It is not sufficient for the challenging party merely to establish doubt about a statute's constitutionality, and it is not enough to establish that a statute probably is unconstitutional. Hammermill Paper Co., 58 Wis. 2d at 46-47.

The presumption of statutory constitutionality is the product of our recognition that the judiciary is not positioned to make the economic, social, and political decisions that fall within the province of the legislature. See State ex rel. Carnation Milk Prods. Co. v. Emery, 178 Wis. 147, 160, 189 N.W. 564 (1922). The duty of the court is only to determine if the legislation clearly and beyond doubt offends a provision of the state constitution that specifically circumscribes legislative action. Hammermill Paper Co., 58 Wis. 2d at 46-47; Chicago & N.W. Ry. Co. v. La Follette, 27 Wis. 2d 505, 521, 135 N.W.2d 269 (1965).
Aicher, 237 Wis. 2d 99, ¶¶ 18-20 (emphasis added).

1. Article I, Section 9
¶ 36. The Kohns set forth two arguments why § 893.89 violates Article I, Section 9 of the Wisconsin Constitution. First, they argue that "[r]ather than recognizing the Kohns' entitlement to a remedy at law for [Lori's] injuries, § 893.89 has the direct effect of extinguishing *26 any remedy as of way back in 1979 ...." Plaintiffs' Br. at 31. They contend that the statute "irrationally deprives [them] of a remedy for an already existing right." Id. at 34. Second, the Kohns argue that unlike the statute of repose at issue in Aicher, § 893.89 is irrational and poor public policy. They argue that there is no rational basis for cutting off their remedy for injuries caused by ITW's negligence. We reject both arguments.
¶ 37. Article I, Section 9 of the Wisconsin Constitution provides:
Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obligated to purchase it, completely and without denial, promptly and without delay, conformably to the laws.
As we recognized in Aicher, "art. I, § 9 confers no legal rights." Aicher, 237 Wis. 2d 99, ¶ 43 (emphasis added). The provision "applies only when a prospective litigant seeks a remedy for an already existing right." Id.
¶ 38. A statute of repose "limits the time period within which an action may be brought based on date of the act or omission." Id., ¶ 26. A statute of repose may therefore bar an action before the injury is discovered or before the injury even occurs. Id. "[B]y definition, a statute of repose cuts off a right of action regardless of the time of accrual." Tomczak v. Bailey, 218 Wis. 2d 245, 277, 578 N.W.2d 166 (1998)(emphasis added). As such, when the legislature enacts a statute of repose, it "expressly cho[o]se[s] not to recognize rights after the conclusion of the repose period[]." Wenke v. Gehl, 2004 *27 WI 103, ¶ 24, 274 Wis. 2d 220, 682 N.W.2d 405 (citing Aicher, 237 Wis. 2d 99, ¶ 54). In other words, a statute of repose does not merely extinguish a party's remedy, it extinguishes the right of recovery altogether. Therefore, statutes of repose do not violate the right to remedy provision of Article I, Section 9 because any right of recovery is extinguished at the end of the repose period and the right for which the litigant seeks a remedy no longer exists. Aicher, 237 Wis. 2d 99, ¶ 54.
¶ 39. Here, § 893.89(2) provides, in part: "[N]o cause of action may accrue and no action may be commenced ... after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death...." The "exposure period" is defined in § 893.89(1) as "10 years immediately following the date of substantial completion of the improvement to real property." It is undisputed that the bleachers were substantially completed in 1969. Thus, the exposure period ended in 1979. As such, as of 1979, the Kohns possessed no right of recovery against ITW. Therefore, because Article I, Section 9 guarantees a remedy only for existing rights, and the Kohns possessed no right of recovery when they brought their action against ITW, § 893.89 does not violate the constitutional guarantee in Article I, Section 9.
¶ 40. However, the Kohns also argue that the statute violates Article I, Section 9 because it is poor public policy and that unlike the statute of repose at issue in Aicher, there is no legitimate reason to deny a right to recovery in this instance when they could not have even discovered the injury at the end of the exposure period. The Kohns misread our decision in Aicher. Our decision to uphold the statute at issue in Aicher under Article I, Section 9, was not premised on *28 our agreement with the policy choice made by the legislature in that instance; rather, it was based on our recognition that statutes of repose represent policy decisions the legislature is entitled to make and our deference to those policy decisions.
¶ 41. In Aicher, we recognized that "[c]ourts may shudder at the unfairness visited by statutes of repose, but we generally acknowledge the policies underlying these limiting statutes.... The question of what the statute of limitations or the statute of repose for a particular action should be is a fundamental question of public policy." Aicher, 237 Wis. 2d 99, ¶¶ 45-46.
¶ 42. Further, we stated:
This court has concluded many times that the legislature may sever a person's claim by a statute of limitations or a statute of repose when the person has had no possibility of discovering the injurywhen the person has been blameless in every respect. These decisions represent judicial deference to the stated policy of the legislature. Protecting the interests of those who must defend claims based on old acts or omissions is a policy concern that legislative bodies have weighed for centuries....
The legislature formulates the statutory law of Wisconsin, pursuant to constitutional authority. The legislature's authority includes the power to define and limit causes of action and to abrogate common law on policy grounds.

... Article I, § 9 does not empower this court to substitute its views for legislative policy any more than art. I, § 9 prevents this court from using sound policy to influence tort law.
Statutes limiting the time period for filing actions historically have been policy decisions within the province *29 of the legislature.... [Statutes of repose] reflect the legislature's view that prompt litigation ensures fairness to the parties....
We remain persuaded that time limitation periods articulated by statutes of repose inherently are policy considerations better left to the legislative branch of government.... Were we to extend a remedy outside the limits of these recognized rights, we effectively would eviscerate the ability of the legislature to enact any statute of repose.
Id., ¶¶ 50-54 (emphasis added).
¶ 43. As such, we are not permitted to second-guess the policy choices the legislature made in enacting § 893.89 under the guise of Article I, Section 9. Regardless of whether this court considers the repose period in § 893.89 to be a wise policy decision or the result it produces in this case to be "fair," these are policy choices the legislature was entitled to make and to which we must defer. Therefore, the Kohns' challenge under Article I, Section 9 must fail.

2. Equal Protection
¶ 44. The Kohns also contend that § 893.89 runs afoul of the constitutional guarantee of equal protection under the state and federal constitutions[9] because it *30 grants protections to a certain class of defendants and not others. Specifically, the Kohns argue that the statute is unconstitutional because it grants protections to those involved in the improvement of real property, but not material manufacturers and owners and occupiers of the property in certain circumstances.
¶ 45. While it may seem odd that the Kohns are essentially alleging that the statute is unconstitutional because it does not protect additional classes of defendants, we specifically held in Funk, 148 Wis. 2d at 68, that a "plaintiff has standing in a representative capacity to raise the rights of the potential defendants excluded from the statute."
¶ 46. When considering an equal protection challenge to a statute, this court employs the rational basis test, unless the statute involves a suspect class or a fundamental right (which § 893.89 does not). Aicher, 237 Wis. 2d 99, ¶ 56; Tomczak, 218 Wis. 2d at 264. "Under the rational basis test, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when it enacted the provision." Aicher, 237 Wis. 2d 99, ¶ 57. Under the rational basis test, it is not sufficient to declare a statute unconstitutional because "some inequality results from a classification[,]" Kallas, 66 Wis. 2d at 388; rather, we must "sustain a statute unless we find that `it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest.'" Aicher, 237 Wis. 2d 99, ¶ 57 (quoting Tomczak, 218 Wis. 2d at 264 (quoting Sambs v. City of Brookfield, 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980))).
*31 ¶ 47. When applying the rational basis test, "`it is not our task to determine the wisdom of the rationale or the legislation.' In particular, limitation periods are a subject over which we have traditionally afforded the legislature significant control." Tomczak, 218 Wis. 2d at 265 (quoting Sambs, 97 Wis. 2d at 371)(emphasis added). See also Aicher, 237 Wis. 2d 99, ¶ 57 (accord). Therefore, "[g]reat deference is afforded to legislative classifications under the rational basis test." Tomczak, 218 Wis. 2d at 264. Moreover, "`it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination[,]'" even if that rationale "`is not likely to be indisputable.'" Id. at 264-65 (quoting Sambs, 97 Wis. 2d at 371)(emphasis added).
¶ 48. A legislative enactment involving classifications will pass the rational basis test if it satisfies the following five criteria:
"(1) All classification[s] must be based upon substantial distinctions which make one class really different from another.
(2) The classification adopted must be germane to the purpose of the law.
(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within a class.]
(4) To whatever class a law may apply, it must apply equally to each member thereof.
(5) That the characteristics of each class should be so far different from those of other classes as to reasonably *32 suggest at least the propriety, having regard to the public good, of substantially different legislation."
Aicher, 237 Wis. 2d 99, ¶ 58 (quoting Tomczak, 218 Wis. 2d at 272-73 (quoting Dane County v. McManus, 55 Wis. 2d 413, 423, 198 N.W.2d 667 (1972))).
¶ 49. With this deferential standard of review in mind, we turn now to address the classifications contained in § 893.89. The ten-year repose period set forth in § 893.89(1) operates to protect certain individuals from suits arising from certain types of injuries. Section 893.89(2) provides, in part:
Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property.

(Emphasis added.)
¶ 50. However, § 893.89(2) goes on to carve out an exception for certain individuals who manufacture or produce material utilized in the improvement to real property. The exception does not cover all who produce or manufacture such material; its coverage extends only to those who manufacture or produce materials if a suit is based on damages resulting from a defect in the material: "This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to *33 commence an action for damages against the manufacturer or producer of the material." Wis. Stat. § 893.89(2).
¶ 51. Further, § 893.89(4) provides:
This section does not apply to any of the following:
(a) A person who commits fraud, concealment or misrepresentation related to a deficiency or defect in the improvement to real property.
(b) A person who expressly warrants or guarantees the improvement to real property, for the period of that warranty or guarantee.
(c) An owner or occupier of real property for damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property.

(d) Damages that were sustained before April 29, 1994.
(Emphasis added.) The Kohns' equal protection challenge focuses on the distinctions the statute draws between those who are involved in the improvement of real property, those who manufacturer or produce defective material utilized in the improvement, and owners or occupiers whose negligence in maintaining, operating, or inspecting the improvement results in damages.
¶ 52. Before discussing the classifications in § 893.89, it is necessary to understand the history of the statute. Section 893.89 represents the legislature's latest incarnation of a statute of repose governing improvements to real property. Two of the previous versions were found unconstitutional by this court.
*34 ¶ 53. In Kallas, 66 Wis. 2d at 384, this court struck down Wis. Stat. § 893.155 (1973), as unconstitutional on equal protection grounds.[10] The statute provided a six-year statute of repose for actions arising out of the improvement of real property against "any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property[.]" Wis. Stat. § 893.155 (1973). However, the statute exempted from its protection "any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action." Wis. Stat. § 893.155 (1973).
¶ 54. The court in Kallas concluded that the statute, by protecting those involved in the design, planning, supervision of construction or construction of real property but not owners and occupants or materialmen, drew unreasonable distinctions between these groups. Kallas, 66 Wis. 2d at 389-91.[11] The court ruled that there was no justification for "the special immunity *35 accorded to the protected class but denied to others similarly situated." Id. at 392. Further, it stated: "While there are public policy reasons that might justify a limitations period that takes into consideration those who are engaged in the construction business, there appears no reason why only a very restricted class of those thus occupied is protected by the statute." Id. at 391.
¶ 55. The legislature promptly amended the statute by virtue of § 2, ch. 335, Laws of 1975, which deleted the exception for owners and occupiers and included surveyors and material providers within the statutory protection. In addition, § 1, ch. 335, Laws of 1975, contained extensive legislative findings and intent in order to justify the protection afforded in the statute. Specifically, the legislature stated that after completion of an improvement, those involved in its construction lack control over the real estate and have no opportunity or right to be made aware of any subsequent changes in the improvement, and no right to modify the improvement or ensure proper maintenance is conducted. § 1, ch. 335, Laws of 1975. The legislature also stated that it was in the public interest to set a point in time to limit liability for errors and omissions relating to the planning, design, and construction of improvements. Id. However, the findings also stated that any class not listed in the statute was not protected. Id.
¶ 56. Subsequently, the legislature repealed and renumbered Chapter 893 of the statutes. § 28, ch. 323, Laws of 1979. Section 893.155 (1975), as amended by *36 § 2, ch. 335, Laws of 1975, was renumbered as § 893.89. § 28, ch. 323, Laws of 1979.
¶ 57. Following the renumbering of the statute, this court in Funk, 148 Wis. 2d at 61, held that § 893.89 (1979-80) violated the equal protection clauses of the federal and state constitutions. The court in Funk found that "[t]he revised statute now appearing as sec. 893.89 suffers from substantially the same deficiencies as the earlier one[,]" id. at 64, in that it continued to exclude owners and occupiers. Id. at 73. The court reasoned:
The substantive effect of the change, insofar as classification is concerned, is merely to add surveyors and material suppliers to the protected class. Owners and occupiers of land are still in the non-protected class. This deficiency alone places the new statute within the proscription of Kallas. Although the body of the statute no longer specifically excepts owners or occupants, the attached Finding (2)(b) states that any omitted classifications are not protected by the statute.
Id. at 66-67.
¶ 58. However, the revised statute at issue in Funk, just like the current statute, applied to individuals "`furnishing ... materials ... of such improvement.'" Id. at 64 (quoting Wis. Stat. § 893.89 (1979)). The court specifically noted that, as opposed to the statute at issue in Kallas, the 1979 version applied to individuals furnishing materials. Id. at 66. When analyzing whether the 1979 statute violated the equal protection clause, the court stated in regard to material providers: "[F]urnishers of materials ... have now been included in the protected class. No doubt, this reduces the under-inclusiveness of the statute. ...." Id. at 73 (emphasis added). Thus, the 1979 statute in Funk was found unconstitutional only because it did not *37 apply to owners and occupiers, as it did not mention this class of individuals. Id. Notably the statute at issue in Funk, although providing immunity to "material providers," made no mention of those responsible for defects in the material, and thus did not apply to them.
¶ 59. The court in Funk specifically stated that the overall purpose of the statutelimiting the long-term liability of those who improve real propertywas a legitimate policy objective:
Thus, there is a rationale expressed that might tend to justify some special protection to tortfeasors whose liability, under ordinary tort rules, could potentially exist for decades.... However, laudable the general public purpose might be, it is the means used to effect that public purpose that is under scrutiny ...."
Id. at 70-71 (emphasis added). That is, while the Funk court found the purpose of the statute to be legitimate, it took issue with the classifications that that statute drew.
¶ 60. The court stated that the legislative findings that distinguished between those who improve property and those who own or occupy that property based on their control over the property was "a distinction without a relevant difference." Id. at 67. Specifically, the court found the "control" rationale to be unpersuasive because the statute, in attempting to limit the liability of those involved in the improvement of property, nonetheless protected some classes of defendants involved in the improvement of property and not others:
Both owners and tenants unprotected by the statute ... may be subject to long-term liability for harms that result from the torts of the protected class. Liability is not terminated when it is shifted to another class whose ability to compensate for injuries is questionable.... " *38 `"It is not at all inconceivable that the owner or person in control of such an improvement might be held liable for damage or injury that results from a defective condition for which the architect or contractor is in fact responsible."'"
Id. at 74-75 (quoting Kallas, 66 Wis. 2d at 389 (quoting Skinner v. Anderson, 231 N.E.2d 588 (Ill. 1967))). Further, the court stated:
"Control" as a standard to justify the underinclusiveness of the statute is unrelated to the fundamental purpose for which the statute was intended. It is a meaningless distinction.
The arbitrary non-inclusion of property owners and tenants was not cured by the addition of land surveyors and materialmen to the protected class. Although the legislature purported to cure the underinclusiveness which invalidated the statute considered in Kallas, it failed to do so in a meaningful way.
Id. at 77 (emphasis added).
¶ 61. Following our decision in Funk, the legislature created 1993 Wis. Act 309, which amended § 893.89.[12] As explained in the legislative history of 1993 Wis. Act 309, the amendments to § 893.89 were passed out of a concern that groups were reluctant to participate in state-sponsored construction projects because of the limited period of protection offered by state-purchased insurance coverage and the potential for unlimited tort liability past the end of such coverage. *39 See LRB Drafting File, 1993 Wis. Act 309. The legislature also expressed concern that:
[As] a major property owner, the State has a loss exposure for anyone injured in a State building. Due to the court ruling [in Funk], the State could be deemed liable even though maintenance was proper and the building designed and constructed to meet code.... Since this bill pertains only to building improvements, it would not prevent recovery where the State negligence in the maintenance of buildings was shown.
Id.
¶ 62. Thus, it is clear that the purpose of § 893.89 is to provide protection from long-term liability for those involved in the improvement to real property. This purpose has been recognized as legitimate by this court: "`[T]here are public policy reasons that might justify a limitations period that takes into consideration those who are engaged in the construction business ....'" Funk, 148 Wis. 2d at 70 (quoting Kallas, 66 Wis. 2d at 391). In other words, the legislature is entitled to address "the long-term liabilitythe `long tail of liability'that accompanies torts of commission or omission in the construction of durable buildings." Id. at 74.
¶ 63. Given that the purpose behind § 893.89 is legitimate, we do not consider whether the legislature made a wise policy decision in choosing to protect those involved in the improvement of real property versus other individuals or whether other groups of individuals deserve protection. Our review is limited to whether the classifications drawn in the statute are rationally related to the purpose of protecting those involved in the improvement of real property from long-term tort liability.
*40 ¶ 64. This court in both Kallas and Funk invalidated the different iterations of the statute of repose for improvements to real property because the distinctions the respective statutes drew between classes of defendants did not relate to the purpose of the statuteto limit liability after a certain point in time for damages caused from improvements to real property. Both the statute at issue in Kallas and the statute at issue in Funk purported to be concerned with protecting those involved in the improvement of real property but excluded classes of defendants who could be involved in such improvements. In other words, the principal objection to the precursors of § 893.89 was "the underinclusiveness of the statute[s]." Funk, 148 Wis. 2d at 73 (emphasis added). Kallas held the statute unconstitutional because it failed to cover owners and occupiers and materialmen. Funk held the statute unconstitutional because, although it applied to material providers, it failed to cover the liability of owners and occupiers in relation to defects in the design and construction of the improvement.
¶ 65. To this extent, the present version of § 893.89 cures what the court in Kallas and Funk found objectionable. Rather than drawing arbitrary profession-based distinctions, as did the statutes at issue in Kallas and Funk, the current version of § 893.89 draws distinctions based on the conduct of certain individuals. The statute begins by broadly including within its protections "owner[s] or occupier[s] of the property or ... any person involved in the improvement to real property" to the extent that a cause of action is based on "any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or *41 the furnishing of materials for, the improvement to real property." Wis. Stat. § 893.89(2).
¶ 66. The statute then proceeds to exclude certain classes of defendants based on the type of conduct that gives rise to potential liability. Owners and occupiers are excluded from the statute's protections only if a cause of action is based upon "damages resulting from negligence in the maintenance, operation or inspection of an improvement to real property." Wis. Stat. § 893.89(4)(c). Thus, owners and occupiers are included within the protection of the statute so long as they are being sued for their conduct in improving the property. This class loses its protection when liability is based upon subsequent negligent maintenance, operation, or inspection of the improvement. Further, unlike the statute at issue in Funk, the liability of those who are involved in the improvement of property is not shifted to owners or occupiers. See Funk, 148 Wis. 2d at 74-75. Owners and occupiers are held liable only for their own negligent maintenance, inspection, or repair of the improvement once it is complete.
¶ 67. Likewise, the statute excepts those who provide material for an improvement if a suit is based on "any defect in any material used in an improvement to real property...." Wis. Stat. § 893.89(2). Thus, material providers are included within the scope of the statute to the extent that a cause of action is based on "the furnishing of materials for" the improvement, § 893.89(2), and are excluded only when liability is based upon a defect in the material provided. In other words, material providers are included within the protections of the statute for their involvement in the improvement  furnishing materials  but are excluded based on their prior conduct of designing or manufacturing the material.
*42 ¶ 68. In sum, § 893.89 protects all persons involved in the improvement to real property but does not protect individuals whose liability arises based on conduct occurring prior to or subsequent to the improvement. These distinctions are rational because they are real, substantial distinctions that are germane to the purpose of the statute  to protect those involved in the improvement of real property. This statute is distinguishable from its predecessors because, as noted, the current statute immunizes all conduct related to the improvement after a period of ten years. It does not cover liability-forming conduct unrelated to the act of improving property, such as manufacturing defects, for any amount of time. Stated another way, the statute protects all who are involved in the actual improvement of real property to the extent they participated in improving the property. The only time individuals involved in the improvement of real property are held liable (after ten years) under the statute is when their liability arises from conduct that preceded or followed the actual improvement.[13]
¶ 69. In Funk, the court held the 1979 statute unconstitutional because it continued to fail to cover owners and occupiers in relation to any liability based on design defects in the improvement or construction of the improvement, but held that the statute's inclusion of those who furnish materials cured the statute's under-inclusiveness in relation to materialmen:

*43 We invalidated the predecessor of this statute [in Kallas] because no reasonable distinction could be found between the builders in the protected class and other like materialmen and owners who were not protected by the statute. As pointed out above, furnishers of materials and land surveyors have now been included in the protected class. No doubt, this reduces the under-inclusiveness of the statute, but owners or occupants who may be liable to suit by third parties as the result of design defects or construction errors or omission are not in the protected class.
Funk, 148 Wis. 2d at 73 (emphasis added).[14] Here, the statute continues to apply to those who furnish materials. It simply does not cover those whose liability arises because of a defect in the material, as did the statute at issue in Funk. However, the current version of the statute now applies to owners and occupiers to the extent their liability is based on design defects or construction errors. They are held liable after ten years only for conduct that occurred after the construction of the improvement.
*44 ¶ 70. Owners and occupiers are protected to the extent they are involved in the actual improvement of the property. They are not protected for post-improvement conduct, such as negligent inspection or maintenance of the improvement. Likewise, material providers are protected in relation to their conduct in the improvement of the property  furnishing materials  but are not protected for conduct that occurred prior to the improvement, namely, producing defective materials. The statute applies with equal force to each member of the classes defined in the statute. The statute protects all those involved in the improvement of real property to the extent liability is based upon such involvement and does not foreclose addition to the numbers included in each class.
¶ 71. That the legislature has chosen not to protect individuals whose conduct precedes or follows the improvement of real property is completely rational, because the purpose of the statute is to protect individuals from liability based upon the actions that occur during their involvement in improving the property. As noted, part of the impetus behind amending § 893.89 was to encourage participation in state-sponsored construction projects. Thus, excluding owners and occupiers from protection from liability based on negligence in inspecting and maintaining the improvement is rational because the project is already completed at the time when these negligent acts occur.
¶ 72. Likewise, excluding material producers from protection from liability when liability is based on defects in material (as opposed to the furnishing of those materials) is rational because those defects will exist regardless of the use to which the material is put. That is, the act giving rise to liability  the defective design or manufacture of the materials  occurs prior to *45 any involvement in the improvement to the property. The material is defective when it is designed or produced and remains defective regardless of the acts of third parties related to the improvement in which it is used. Notably, the current version of § 893.89, with regard to materialmen, is almost identical to the statute at issue in Funk in that it covers those who furnish materials for an improvement, but not those responsible for defects in the material. The court in Funk explicitly held that in relation to materialmen, the statute was no longer underinclusive because it applied to "furnishers of materials[.]" Funk, 148 Wis. 2d at 73.
¶ 73. Additionally, because materials are often designed without regard to the specific projects in which they will be incorporated,[15] a defectively designed material will affect a large number of projects and individuals. Further, the material will continue to be defective until its design or manufacturing process is changed. Thus, when a manufacturer defectively designs a material, such as aluminum, that aluminum will be placed in the stream of commerce and will affect every project in which it is utilized. The aluminum that rolls off the assembly lines will continue to be defective until the manufacturer changes the design. As such, when material is defective, it will affect a large number of people and there will be numerous individuals who can testify as to its defective condition.
¶ 74. In contrast, when an improvement is designed or constructed, any tortious acts are confined to the limited time during which the improvement is being planned and constructed and are directed to the specific *46 project under construction. As such, the number of witnesses who can testify as to such tortious conduct is limited to those involved in that specific improvement. Thus, the legislature may reasonably have concluded it would be much more difficult to prove or disprove wrongful conduct, due to the lack of witnesses, faded memories, etc., in relation to a specific improvement,[16] than it would be to prove or disprove wrongful conduct in relation to the defective design of the material utilized in that improvement. It is reasonable to conclude that after ten years it would be much more difficult to prove or disprove tortious conduct in relation to the design or construction of a set of bleachers than it would to prove the raw material utilized in those bleachers was defectively designed.
¶ 75. While there may be instances in which a material provider specifically designs a material for a particular improvement project or custom manufactures the material for that project, there is still a rational basis to distinguish this class of defendant from those protected under the statute. A material producer that designs or produces a defective material places that material in the stream of commerce and has the ability to change a defective design. Further, the material itself remains defective throughout the life of the project in which it is used. For instance, had Standard produced defective aluminum for use in the seats in the bleachers, that aluminum would have remained defective regardless of any subsequent modifications to the bleachers.
*47 ¶ 76. In contrast, an individual who merely installs an improvement completes his work upon the installation of the improvement. That improvement may then be subsequently modified by the owner or occupier. The contactor who installed the improvement has no right to ensure that his work is properly inspected and maintained throughout the life of the improvement. Thus, in contrast to the material supplier, the installer's work may be subsequently modified by another party. Therefore, the contractor who installs an improvement may face potential liability for conduct of others that occurred after the improvement was installed and may encounter proof problems that a material producer does not.
¶ 77. Conversely, an individual who merely installs an improvement is distinguished from an owner or occupier who negligently maintains or repairs an improvement because the former's duty to properly install the improvement ends at the time the improvement is completed, whereas an owner or occupier has a continuing duty to properly maintain and repair the improvement. A contractor who installs an improvement may thus face liability long after any negligent conduct has occurred, whereas the owner or occupier who continually negligently maintains an improvement faces liability for recent acts of negligence. With regard to these two classes, the legislature could have reasonably determined that:
"`[t]he lapse of time between completion of an improvement and initiation of suit often results in the unavailability of witnesses, memory loss and a lack of adequate records. Another problem particularly critical is the potential application of current improved state-of-the-art standards to cases where the installation and design of an improvement took place many years ago.'"
*48 Krull v. Thermogas Co. of Northwood, 522 N.W.2d 607, 615 (Iowa 1994)(quoted source omitted).
¶ 78. An owner or occupier engaged in continuous acts of negligent maintenance, inspection, and repair clearly does not face the same concerns. Moreover, such acts are in no way related to the act of completing the improvement. Further, as previously stated, owners and occupiers are held liable only for their own post-improvement negligence; the statute eliminates any shift of liability from those improving the property to those who own or operate the property.
¶ 79. These real and substantial distinctions suggest the propriety of different legislation governing: 1) those involved in the improvement of real property who produce defective materials; 2) those who negligently inspect, maintain, and repair improvements; and 3) those who merely design, survey, supervise, or construct the improvement.
¶ 80. Therefore, we cannot conclude that § 893.89 is patently arbitrary or bears no rational relationship to a legitimate governmental interest. The classifications within § 893.89 rationally serve the legitimate purpose of limiting the long-term liability of those who are involved in the improvement of real property. The distinctions drawn by the statute are based on real and substantial distinctions, are germane to the purpose of the law, are not based on existing circumstances only, apply equally to all the members of each respective class, and suggest the propriety of different legislation for each class. Thus, we hold that § 893.89 does not violate the equal protection clauses of the state or federal constitution.

*49 VI. SUMMARY
¶ 81. We hold that the bleachers in question constitute an improvement to real property for purposes of § 893.89. Further, we hold that § 893.89 does not violate Article I, Section 9 of the Wisconsin Constitution. Finally, we hold that § 893.89 does not violate the guarantee of equal protection in the federal and state constitutions.
By the Court.  The decision of the court of appeals is reversed.
¶ 82. LOUIS B. BUTLER, JR., J. (dissenting).
The majority concludes that the home bleachers at Darlington High School purchased in 1969 constitute an "improvement to real property" for purposes of Wis. Stat. § 893.89 (2001-02),[1] and that § 893.89 does not violate Article I, Section 9 of the Wisconsin Constitution. Majority op., ¶ 10. I agree, and join the majority's *50 opinion with respect to its decision on these issues. The majority further concludes that § 893.89 does not violate the equal protection clauses of the federal[2] and state constitutions.[3]Id. For the reasons stated by this court in Kallas Millwork Corp. v. Square D Co., 66 Wis. 2d 382, 225 N.W.2d 454 (1975), and Funk v. Wollin Silo & Equipment, Inc., 148 Wis. 2d 59, 435 N.W.2d 244 (1989), I disagree. I therefore respectfully dissent from that portion of the decision.

I
¶ 83. Twice before this court has struck down predecessors to Wis. Stat. § 893.89. A careful review of those cases reveals that Wis. Stat. § 893.89 remains unconstitutional.
¶ 84. In Kallas, this court determined that the predecessor statute to Wis. Stat. § 893.89, Wis. Stat. § 893.155 (1971),[4] violated constitutional guarantees of equal protection under the United States and Wisconsin *51 Constitutions. Kallas, 66 Wis. 2d at 391, 393. The issue was whether there were "any real differences to distinguish the favored class  those persons who perform and furnish the `design, planning supervision of construction or construction' of improvements to real property  from other classes, such as materialmen, who are ignored by the statute, and owners and occupants, who are specifically excepted." Id. at 389. This court concluded there were not. It was unreasonable to provide "special and unusual immunities" to those persons "performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property." Id. at 388, 391. As the Kallas court concluded: "it is ludicrous to permit a recovery against a manufacturer of a negligently formulated mortar or adhesive, but to deny a recovery against an architect who negligently designed a cornice or façade so that its fall was inevitable." Id. at 391-92.
¶ 85. Months after this court's decision in Kallas, the legislature scrambled to revise Wis. Stat. § 893.155 and eventually created Wis. Stat. § 893.89 (1979-80).[5] *52 In an attempt to bypass Kallas, the legislature included "surveyors" and "material suppliers" (that is, those who merely furnish materials) to the protected class and deleted the sentence that excluded "owners and occupiers." See Funk, 148 Wis. 2d at 66, 73.
¶ 86. The statute was again challenged, and in Funk, this court again struck down the statute as violating equal protection. Id. at 77. The Funk court observed that the legislature attempted to justify its distinction between persons who had a hand in planning, design, and construction of improvements against those who subsequently own and occupy the property by noting that the former lacked control "over other forces, uses and intervening causes" that caused strain on the improvements. Id. at 66-67. "`Control,'" this court wrote, "is irrelevant to the fundamental problem the statute purportedly addresses, the long term liability  the `long tail of liability'  that accompanies torts of commission or omission in the construction of durable buildings." Id. at 74. In the end, this court noted that the protected persons would never be liable for negligence arising from the owner's and occupier's failure to adequately control the property. Id. at 75. If the legislature was actually concerned with protecting those without "control," then this court noted that "component parts manufacturers" should also be protected. Id. at 76.
¶ 87. Thus, while the legislature purported to cure the under-inclusiveness that invalidated the statute in Kallas, this court in Funk concluded that "it failed to do so in a meaningful way." Id. Because "[t]he *53 statute still affords its protection and favors without a reasonable and rational basis," this court concluded the statute violated equal protection. Id. at 77.
¶ 88. Following this court's decision in Funk, the legislature amended Wis. Stat. § 893.89. A number of changes were made: owners and occupiers were included in the protected class and a number of exceptions were carved out. See § 893.89 (2001-02). What is critical here, however, is that the legislature excluded a key class:
This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.
Id.
¶ 89. This exclusion reflects the exact same problem identified by this court in Kallas 30 years ago: "it is ludicrous to permit a recovery against a manufacturer of a negligently formulated mortar or adhesive, but to deny a recovery against an architect who negligently designed a cornice or façade so that its fall was inevitable."[6]Kallas, 66 Wis. 2d at 391-92 (emphasis added).
¶ 90. If it was ludicrous then, it is ludicrous now. Nothing has changed. Negligent designers cannot lawfully be granted "special and unusual immunities." Id. at 388. Because the legislature has made the same error, this court must strike down Wis. Stat. § 893.89 on equal protection grounds.
¶ 91. The majority minimizes this problem by attempting to rationalize a distinction between a "material *54 producer" that designs or produces a defective material and places that material in the stream of commerce from one who merely installs an improvement. Majority op. at ¶¶ 70-71. "[E]xcluding material producers from protection from liability when liability is based on defects in material is rational because those defects will exist regardless of the use to which the material is put." Id., ¶ 69. Further, the defective material "itself remains defective throughout the life of the project in which it is used." Id., ¶ 70.
¶ 92. The circumstances here indicate why this distinction is not rational. The majority has simply skated over the fact that ITW was not only the installer of the bleachers, it was also the designer of the bleachers. The Kohns have alleged that the bleachers were defectively designed. As such, the Kohns contend that the bleachers were "defective throughout the life of the project." There continues to be no rational distinction between protecting defective designers but not defective manufacturers. Our decisions in Kallas and Funk still directly control the outcome of this case, and I see no reason to abandon these precedents now.

II
¶ 93. Based on the majority's own reasoning, this court should still strike down Wis. Stat. § 893.89 as violating equal protection.
¶ 94. The majority suggests that "[r]ather than drawing arbitrary profession-based distinctions, as did the statutes at issue in Kallas and Funk, the current version of § 893.89 draws distinctions based on the conduct of certain individuals." Majority op., ¶ 65. The majority asserts that Wis. Stat. § 893.89 "protects all persons involved in the improvement to real property *55 but does not protect individuals whose liability arises based on conduct occurring prior to or subsequent to the improvement." Id., ¶ 68. On this basis, the majority states that the statute is constitutional.
¶ 95. That conclusion, however, again disregards what the Kohns have alleged here. Aside from claiming that the bleachers were negligently constructed, the Kohns specifically allege that the bleachers were "inherently unsafe" due to their "negligent design." The Kohns further allege that "[b]ecause of the dangerously defective nature of the bleachers that existed when the product left the possession or control of the seller [ITW], the product caused harm." If conduct is the touchstone that saves the statute, when exactly does the majority think the design specifications were made for the bleachers?[7] During construction? After construction?
¶ 96. The conduct is clearly alleged to have occurred "prior to ... the improvement." See id. Because that conduct is not protected while other conduct is, the statute is under-inclusive under the majority's own reasoning.
*56 ¶ 97. I would therefore affirm the decision of the court of appeals. For the foregoing reasons, I respectfully dissent.
¶ 98. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.
*57 
NOTES
[1] Standard subsequently merged into Medalist Industries, Inc., which, in turn, merged into ITW.
[2] The contract with Standard also involved the installation of visitor bleachers on the opposite side of the stadium and track. These bleachers are 10 rows tall and 90 feet in length. The visitor bleachers also include a 50-inch wide walkway elevated 30 inches above the ground.
[3] The summary judgment materials contain numerous photographs of the bleachers and stadium at Darlington High School from different angles.
[4] All subsequent references to the Wisconsin Statutes are to the 2001-02 version unless otherwise indicated.
[5] Cf. Witham v. Whiting Corp., 975 F.2d 1342, 1345-46 (7th Cir. 1992)(holding that under Illinois' statute of repose a product could constitute an "improvement to real property" under the following definition: "`an addition to real property amounting to more than mere repair or replacement, and which substantially enhances the value of the property'") (quoting Calumet Country Club v. Roberts Envtl. Control Corp., 483 N.E.2d 613 (Ill. App. Ct. 1985)); Ahrens v. Town of Fulton, 2002 WI 29, ¶ 29, 251 Wis. 2d 135, 641 N.W.2d 423 (for purposes of tax statute, "a mobile home is an improvement to real property when the home is resting for more than a temporary time, in whole or in part, on some other means of support than its wheels"); Black's Law Dictionary 761 (7th ed. 1999) (defining "improvement" as "[a]n addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance"); The American Heritage Dictionary of the English Language 909 (3d ed. 1992) (defining "improve" as: "To raise to a more desirable or more excellent quality or condition; make better[;]" or "[t]o increase the productivity or value of (land or property)[;]" or "[t]o make beneficial additions or changes." The focus of these definitions is on the fact that the addition improves the value of the property. See also 63B Am. Jur. 2D Products Liability § 1631 (2d ed. 1997) ("Although the permanent nature of an alleged improvement is a consideration, some courts do not view permanency as a mandatory requirement.") (emphasis added).
[6] For this reason, we conclude that the court of appeals' decision in All City Communication Co. v. DOR, 2003 WI App 77, 263 Wis. 2d 394, 661 N.W.2d 845, is inapplicable to this case. The question in All City Communication was whether a communication tower was "personal property" or "real estate" for purposes of a tax statute. Id., ¶¶ 1, 13. All City Communication did not involve the application of the test for "improvements to real property" and instead applied the test governing fixtures, i.e., real estate. Id., ¶ 13. As the court of appeals aptly stated: "Borrowing language from one context and applying it to another poses a danger." Id., ¶ 16.
[7] Also, we note that while the test for "fixtures" focuses on the degree of physical annexation of an item to a piece of property rather than simply whether the item is an "addition to or betterment of" the property (the appropriate test here), the test for "fixtures" nonetheless incorporates a party's intent into the analysis of whether the item is permanently annexed to the land. See All City Communication, 263 Wis. 2d 394, ¶ 14 (citing DOR v. A.O. Smith Harvestore Prods., Inc., 72 Wis. 2d 60, 68, 240 N.W.2d 357 (1976)).
[8] In contrast to the statute at issue in Swanson Furniture Co. v. Advance Transformer Co., 105 Wis. 2d 321, 313 N.W.2d 840 (1982), § 893.89(2) applies to "owner[s] or occupier[s] of the property or ... any person involved in the improvement to real property...." Thus, the category of persons protected by the statute at issue in Swanson and the statute at issue here are entirely different. Here, Standard, ITW's predecessor, contracted to deliver materials for and supervise the installation of the bleachers at Darlington High School. Thus, Standard plainly qualifies as a "person involved in the improvement to real property" who "furnish[ed] ... materials for" the improvement and "supervise[ed] ... construction of" the improvement. Wis. Stat. § 893.89(2). The contract was for the specific project at Darlington High School. Standard was therefore directly involved in the improvement to Darlington's property.
[9] This court has long held that "[w]e have given the equal-protection provision of the Wisconsin Constitution and the parallel clause of the United States Constitution identical interpretation." Funk v. Wollin Silo & Equip., Inc., 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244 (1989) (citing State ex rel. Sonneborn v. Sylvester, 26 Wis. 2d 43, 49, 132 N.W.2d 249 (1965)). See also Aicher v. Wisconsin Compensation Fund, 2000 WI 98, ¶ 55 n.14, 237 Wis. 2d 99, 613 N.W.2d 849 ("We apply the same interpretation to the equal protection provisions of both the Wisconsin Constitution and the federal constitution.").
[10] In a somewhat perplexing manner, the court in Kallas Millwork Corp. v. Square D Co., 66 Wis. 2d 382, 384, 225 N.W.2d 454 (1975) [hereinafter "Kallas"], began by stating that the statute was also in violation of Article I, Section 9 of the Wisconsin Constitution, but later expressly stated that although there was a plausible argument that the statute violated Article I, Section 9 of the Wisconsin Constitution, "we do not rest our decision on that aspect of possible unconstitutionality." Id. at 393. Thus, the language in Kallas regarding Article I, Section 9 is dicta, and, in any event, is inconsistent with Aicher.
[11] The dissent fails to recognize that the chief objection to the statute in Kallas was that it provided special immunity "to the protected class but denied [immunity] to others similarly situated." Kallas, 66 Wis. 2d at 392. Here, in contrast to the statute at issue in Kallas, § 893.89 does apply to materialmen to the extent they furnished materials for the improvement. Both materialmen and designers are covered under the current statute to the extent they are similarly situatedi.e., involved in a specific improvement to property.
[12] Following this court's decision in Funk, 148 Wis. 2d at 61, the legislature twice amended § 893.89 in 1993. 1993 Wis. Act 309 made the substantive changes to the statute that are under consideration in this case. 1993 Wis. Act 311 corrected a scrivener's error made when drafting 1993 Wis. Act 309, relating to the period of repose.
[13] The dissent fails to appreciate that the design of the improvement is part of the process of improving property and is specific to that improvement. See dissent, ¶ 95. In contrast, as discussed infra, the materials utilized in the construction of an improvement are generally designed without any regard to the purposes for which they will be eventually put and will be defective regardless of the project in which they are utilized.
[14] Thus, the dissent is incorrect when it compares the current statute to the statute at issue in Kallas, with respect to materialmen. Dissent, ¶ 89. The statute here is identical to the statute at issue in Funk with respect to materialmen, as it covers those who furnish materials but does not apply to those responsible for defects in the material. The court in Funk held that by including those who furnish materials under the revised statute, the legislature had eliminated the statute's under-inclusiveness vis-à-vis materialmen. Funk, 148 Wis. 2d at 73. Although the Funk court mentioned that component parts manufacturers were not covered, it did so only to demonstrate that the legislature's "control" rationale vis-à-vis owners and occupiers was irrational. Funk, 148 Wis. 2d at 76. At no point did the Funk court hold that the statute was unconstitutional because it failed to apply to component parts manufacturers.
[15] For instance, there is no evidence that the aluminum utilized in the bleachers was specifically designed or manufactured for the project at Darlington High School.
[16] Krull v. Thermogas Co. of Northwood, 522 N.W.2d 607, 615 (Iowa 1994)(noting that "`[t]he lapse of time between completion of an improvement and initiation of suit often results in the unavailability of witnesses, memory loss and a lack of adequate records'") (quoted source omitted).
[1] Wisconsin Stat. § 893.89 (2001-02) provides in pertinent part:

Action for injury resulting from improvements to real property. (1) In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.
(2) Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property. This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.
[2] Article XIV, Section 1, Amendments to the United States Constitution, provides in pertinent part that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws."
[3] Article I, Section 1 of the Wisconsin Constitution provides in pertinent part that "[a]ll people are born equally free and independent, and have certain rights; among these are life, liberty and the pursuit of happiness ..."
[4] Wisconsin Stat. § 893.155 (1971) provided:

Within 6 years. No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 6 years after the performance or furnishing of such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action.
[5] Wisconsin Stat. § 893.89 (1979-80) provided:

Action for injury resulting from improvements to real property. No action to recover damages for any injury to property, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, land surveying, planning, supervision of construction, materials or construction of such improvement to real property, more than 6 years after the substantial completion of construction. If the injury or defect occurs or is discovered more than 5 years but less than 6 years after the substantial completion of construction, the time for bringing the action shall be extended 6 months.
[6] Regardless of whether this was the chief objection to the statute or not, it was a constitutional infirmity that this court recognized then and still exists today.
[7] The narrow focus of the majority's "conduct" rationale is troublesome for another reason. That distinction would protect custom designers (which I gather from the majority opinion as meaning those who design and forge improvements specifically for the requested project, see majority op., ¶¶ 73-74) while it excludes mass production designers (by mass production designers, I mean those who design and manufacture certain products on a wide-scale basis that could later constitute "improvements"). First, I see no rational basis for this distinction. Second, this is a major sub silencio departure from Kallas Millwork Corp. v. Square D Co., 66 Wis. 2d 382, 225 N.W.2d 454 (1975), and Funk v. Wollin Silo & Equipment, Inc., 148 Wis. 2d 59, 435 N.W.2d 244 (1989).